2004 VT 72

# In re Hinsdale Farm

[858 A.2d 249]

No. 02-566

Present: Amestoy, C.J., Johnson, Skoglund and Reiber, JJ., and Gibson, J. (Ret.), Specially Assigned

Opinion Filed August 13, 2004

*Ronald A. Shems* and *John B. Kassel* of *Shems Dunkiel & Kassel PLLC*, Burlington, for Appellants.

*Liam L. Murphy* and *Abby C. Moskovitz* of *Langrock, Sperry & Wool, LLP*, Burlington, for Appellee.

¶ 1. **Skoglund, J.** Appellants Citizens for Safe Farming, Inc., William J. and Bonnie F. Bly, Bethany and Shawn Bedard, and Steven and Jane Ann Kantor challenge a Water Resources Board (WRB) order dismissing their appeal. They appealed a Winooski Natural Resources Conservation District decision issuing an agricultural dam permit (Permit) to Hinsdale Farm to construct a dairy waste storage facility. The WRB dismissed the appeal for lack of jurisdiction. We affirm.

¶ 2. On August 19, 2002, the District issued Hinsdale an agricultural dam permit pursuant to its authority under the Vermont Dams Act, 10 V.S.A. § 1083a. Citing 10 V.S.A. § 1099, appellants appealed the District's decision to the WRB. In their notice of appeal, appellants asserted that the Permit was issued in error because it did not serve the public good, adversely affected scenic and recreational values, adversely affected water uses, was hazardous to public health, would contaminate ground and surface waters, was inadequately designed, failed to provide public benefits, would diminish property values, and would be a public safety risk. Appellants also filed a notice of appeal in Chittenden Superior Court pursuant to V.R.C.P. 75. In their superior court complaint, appellants insisted that the WRB had jurisdiction over their appeal, and that the second appeal was only a protective measure.

¶ 3. WRB Chair David J. Blythe determined at the prehearing conference that whether the WRB had jurisdiction to hear the appeal was a threshold issue that needed to be briefed, argued, and decided before the WRB could turn to the merits. The WRB received briefing from the parties and convened on November 19, 2002 to hear oral argument on whether the WRB had jurisdiction over agricultural dam permit appeals. In December 2002, the WRB issued a decision dismissing the appeal for lack of jurisdiction.

¶ 4. The WRB relied on the plain language of the Vermont Dams Act, focusing particularly on the fact that 10 V.S.A. § 1099, which governs appeals from dam permits, does not expressly provide the WRB with jurisdiction over appeals from district agricultural dam permit decisions. Section 1099's silence as to how district decisions are to be appealed, when combined with the well-settled Vermont law that the jurisdiction of administrative bodies is limited to that which has been expressly conferred by statute, persuaded the WRB that it lacked jurisdiction to hear this appeal.

¶ 5. We review the WRB's dismissal for lack of subject matter jurisdiction de novo. *Jordan v. State*, 166 Vt. 509, 511, 702 A.2d 58, 60 (1997). The issue presented in this appeal is whether the Dams Act gives the WRB jurisdiction over appeals of agricultural dam permits issued by natural resource conservation districts. This is a question of statutory interpretation. When interpreting a statute, our principal objective is to implement legislative intent. *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996). Where legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resort to statutory construction. *Derosia v. Book Press, Inc.*, 148 Vt. 217, 222, 531 A.2d 905, 908 (1987). Where there is ambiguity or uncertainty about legislative intent, we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law. See *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). "[T]he legislative history and circumstances surrounding [a statute's] enactment, and the legislative policy it was designed to implement," can also be helpful in discerning legislative intent. *Perry v. Med. Practice Bd.*, 169 Vt. 399, 406, 737 A.2d 900, 905 (1999).

¶ 6. Under the Vermont Dams Act, 10 V.S.A., chapter 43, responsibility for issuing nearly all dam permits is divided between two entities. Permits for dams used to generate hydroelectric power are issued by the Public Service Board (PSB). 10 V.S.A. § 1081. With one exception, permits for all other types of dams are issued by the Agency of Natural Resources through the Department of Environmental Conservation (DEC). *Id.* That one exception is permits for agricultural dams, which are issued by natural resource conservation districts pursuant to 10 V.S.A. § 1083a.

¶ 7. Section 1085 of the Dams Act makes clear that different procedures apply to the review and approval of dam permit applications depending on which agency has jurisdiction. Before granting permits, DEC must hold a public information meeting "to hear comments on whether the proposed project serves the public good and provides adequately for the public safety," *id.* § 1085(1), while the PSB must hold a hearing on each application to make the same determination. *Id.* § 1085(2). In contrast, when the owners of an agricultural enterprise seek to construct or alter any permitted dam, pond, or impoundment on their property, they must apply for an agricultural dam permit from the local natural resource conservation district. The district then "review[s] and approve[s] the applications in the same manner as

would the department." *Id.* § 1083a(a). When there is a change in use or ownership affecting use, jurisdiction over agricultural dam permits reverts to DEC. *Id.* § 1083a(c).

¶ 8. Appeals of dam permitting decisions are governed by 10 V.S.A. § 1099. Parties aggrieved by a PSB decision can appeal directly to the Vermont Supreme Court. *Id.* § 1099(b). Permitting decisions of DEC are appealable to the WRB. *Id.* § 1099(a). The Dams Act generally and § 1099 specifically are silent on the question of where appeals lie from decisions of the natural resource conservation districts.

¶ 9. After reviewing the entire statutory scheme and the relevant legislative history we find that, as currently written, the statutes do not provide the WRB with jurisdiction to hear appeals from agricultural dam permit decisions by the districts. We find support for our ruling in prior case law, relevant statutes and rules, and legislative history.

¶ 10. First, the WRB was correct when it stated that the jurisdiction of administrative bodies is limited. We have repeatedly affirmed that "[p]ublic administrative bodies have only such adjudicatory jurisdiction as is conferred on them by statute, with nothing presumed in favor of their jurisdiction." *Gloss v. Delaware & Hudson R.R.*, 135 Vt. 419, 422, 378 A.2d 507, 509 (1977). "The Legislature has made it clear that administrative departments may exercise only those powers expressly conferred, and that authority cannot arise through implication." *Subud of Woodstock, Inc. v. Town of Barnard*, 169 Vt. 582, 583, 732 A.2d 749, 750 (1999) (mem.) (citing to 3 V.S.A. § 203).

¶ 11. The only appellate power the Legislature expressly conferred on the WRB was to hear appeals from DEC permitting decisions. See 10 V.S.A. § 1099. Appellants argue that, because § 1083a(a) says that districts shall review permit applications in the same manner as DEC, by implication the Legislature also intended to have appeals from district decisions reviewed in the same manner as appeals from DEC decisions. To come to this conclusion would require us to impermissibly presume jurisdiction without any express statutory authority, and in the process violate long-held precedent of this Court. In the absence of an express grant of adjudicatory jurisdiction, we will not invent it. See *State v. Brooks*, 162 Vt. 26, 29, 643 A.2d 226, 228 (1993).

¶ 12. Second, our ruling is further supported by relevant legislative history. The regulation of dam permits originated in 1929, at which point the Public Service Commission had jurisdiction over all dam permit applications. See 1929, No. 80, §§ 1-10. At that time, appeals from its decisions were taken in the same manner as any other order of

the Public Service Commission. See *id.* § 6. In 1949, the Legislature transferred jurisdiction over all dam permits to the Water Conservation Board, with the exception of those involving hydroelectricity generation, which stayed within the purview of the Public Service Commission. See 1949, No. 223, § 1. Appeals from dam permit decisions were then taken in the same manner as any other order of the Water Conservation Board. See *id.* In 1960, the Public Service Commission was renamed the PSB, and in 1961, the Water Conservation Board was renamed the Water Resources Board. See 1959, No. 329 (Adj. Sess.), § 39; 1961, No. 100, § 2.

¶ 13. In 1976, the Legislature enacted 10 V.S.A. § 1083a, which divested the WRB of jurisdiction over agricultural dam permits. See 1975, No. 179 (Adj. Sess.), § 5. Regulation of agricultural dam permits was transferred to the natural resource conservation districts, which were mandated to "review and approve the applications in the manner provided for in this chapter." *Id.* When there was a change of use or ownership affecting use, however, jurisdiction still reverted to the WRB for a determination of public good and public safety. *Id.*

¶ 14. In 1982, the Legislature passed Act 242, which again amended the Dams Act, giving DEC jurisdiction over dam permit applications for all projects other than those involving hydroelectricity or agriculture. 1981, No. 242 (Adj. Sess.), §§ 2, 5. The Act also spelled out the different procedures the DEC and the PSB were to follow to evaluate each dam permit. To assess the public good and public safety of a project, the DEC was now required to hold a public information meeting, while the PSB was to hold a hearing. See *id.* § 7. In a related change, the districts were now required to "review and approve the [agricultural dam permit] applications in the same manner as would the department." See *id.* § 5. Similarly, if there was a change of use or ownership affecting use, jurisdiction now reverted to DEC, rather than to the WRB as it had previously. See *id.* The Legislature then expressly gave the WRB jurisdiction to hear appeals from DEC permitting decisions. See *id.* § 15. Appeals from WRB decisions went on to superior court. See *id.* Act 242 made no mention of a route of appeal for district decisions. Lastly, in 2002, the Legislature again amended § 1099, sending appeals from WRB decisions directly to the Supreme Court rather than the superior court, where they were previously heard. 2001, No. 94 (Adj. Sess.), § 3. The Legislature once more did not include any mention of a route of appeal for district decisions.

¶ 15. The history and purpose of 10 V.S.A. §§ 1083a and 1099 suggest that the Legislature intended to keep control over agricultural dams separate from regulation of other dams and outside the jurisdiction of the WRB. In 1976, the Legislature expressly and intentionally divested the WRB of jurisdiction over agricultural dam permits, giving it to the entirely separate natural resource conservation districts. 1975, No. 179 (Adj. Sess.), § 5. In support of this amendment, Fred Mehlman, then Chairman of the WRB, engaged in the following exchange before the Senate Natural Resources Committee:

> Sen. Gibb: Let me see if I can understand what this is all about. Under the basic statute the construction of any dam or impoundment has to be authorized by the Water Resources Board .... This amendment gives the authority to approve any dam on an agricultural enterprise ... to the natural resources conservation district rather than the Water Resources Board. Is that correct?

> Mr. Mehlman: That is our understanding of it.

Statements of Senator Gibb and Chairman Mehlman on H. 199 to Senate Natural Resources Committee, at 7 (Feb. 11, 1976). Senator Gibb went on to further clarify the purpose of § 1083a, saying:

> Sen. Gibb: In other words what this comes down to is that the House Agricultural Committee does not want to have to go to the Water Resources Board to get a permit for construction of a dam.

> Rep. Steventon: Evidently that is about it. There is something that is bugging them pretty strongly.

Statements of Senator Gibb and Representative Steventon on H. 199 to Senate Natural Resources Committee, at 16 (Feb. 11, 1976).

¶ 16. Moreover, contrary to the appellants' argument, Act 242 changed little about the regulation of agricultural dam permits and does not illustrate the Legislature's intent to give appellate jurisdiction over district decisions to the WRB. Committee testimony surrounding the passage of Act 242 suggests that the Legislature did not intend to change anything about the existing jurisdiction of the agency involved in agricultural dam permitting. Representative Carse, an advocate of Act 242, explained the effect of the bill on the agricultural dam-permitting process saying, "[t]he agricultural dams remain exactly the same. There is no change there and they are under the Natural

Resource Conservation Districts and they approve and regulate those." Statement of Representative Carse on H. 460 to House Energy and Natural Resource Committees, at 5 (Dec. 10, 1981). In an April 13, 1982 hearing on Act 242 before the Senate Agricultural Committee, Representative Carse again explained that, with respect to agricultural dams, "[t]he only thing we changed is . . . [that] [t]he existing law says that when a conservation district wants some help or advice, they may request . . . assistance from the agency and all we have done is say they request assistance from the department. . . . Otherwise there is no change in jurisdiction." Statement of Representative Carse on H. 460 to Senate Agricultural Committee, at 7 (Apr. 13, 1982). Later, in that same hearing, Representative Carse and Senator Howrigan had the following exchange:

> Sen. Howrigan: Anybody can build a dam [to impound] up to 500,000 [cubic] feet?
>
> Rep. Carse: Yes, and if it is for agricultural purposes, it is not under this bill. Agricultural dams are separate and they are under the soil conservation people. If it is going to produce electricity, you have to go to the public service board. Otherwise, you go to the . . . department instead of the board; you appeal to the board.

Statements of Senator Howrigan and Representative Carse on H. 460 to Senate Agricultural Committee, at 17 (Apr. 13, 1982). Finally, as Representative Carse led the Senate Energy and Natural Resources Committees through the bill, he said, "to reassure the agricultural community, we are not changing existing law in regard to agricultural dams. At the present time agricultural dams . . . are under the Natural Resources Conservation District. The only change that is made in this is that the department instead of the board will now furnish advice to the conservation district if they're asked for it." Statement of Representative Carse on H. 460 to Senate Energy and Natural Resources Committees, at 22 (March 10, 1982).

¶ 17. These statements indicate that Act 242 was not intended, as appellants argue, to change the statutory scheme to provide the WRB with jurisdiction over appeals from district decisions, but rather to clarify and "separate the functions of the department and the board." Statement of Representative Carse on H. 460 to House Energy and House Natural Resources Committees, at 3 (Dec. 10, 1981). The

testimony suggests that the legislators intended to keep the agricultural dam-permitting process separate and apart from the WRB, and that it continue to be administered by a completely different agency. While we have stated that testimony and statements of legislative witnesses and individual legislators can be "inconclusive at best," *Vt. Dev. Credit Corp. v. Kitchel*, 149 Vt. 421, 428, 544 A.2d 1165, 1169 (1988), we cite the committee testimony and legislators' discussions here because they convincingly illustrate that the Legislature did not intend to give the WRB authority to hear appeals from the natural resources conservation districts.

¶ 18. Finally, we agree with Hinsdale that the plain language of the Dams Act suggests that the Legislature knew how to distinguish between the jurisdiction, function, and routes of appeal of the different agencies with dam-permitting responsibilities. Its failure to expressly grant the WRB jurisdiction over appeals from district decisions, therefore, indicates a deliberate effort to exclude agricultural dam permit appeals from the WRB's reach. The Legislature carved out very specific and narrow jurisdictions for the three entities responsible for dam permits, leaving little question as to which agency was responsible for which subject area and where appeals from two of the three agencies should be taken. See 10 V.S.A. §§ 1081, 1083a, 1085, 1099. During every step of the application, approval, and appeals processes for dam permits, the Legislature carefully spelled out how it wanted to delineate jurisdiction and authority to the various dam-permitting agencies. Its silence as to the route of appeal for district permitting decisions should be read as evidence that the Legislature did not intend to give the WRB jurisdiction over this appeal. See *Grenafege v. Dep't of Employ. Sec.*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976) (employing the precept of *expressio unius est exclusio alterius* to hold that "wages" meant those earned in subject employment where Legislature so indicated, but such restriction did not apply where Legislature did not so indicate).

¶ 19. Even the WRB's own rules do not anticipate that it has jurisdiction over district decisions. "[W]here a statute is silent or ambiguous regarding a particular matter this Court will defer to agency interpretation of a statute within its area of expertise as long as it represents a permissible construction of the statute." *In re Smith*, 169 Vt. 162, 169, 730 A.2d 605, 611 (1999). In its own Rules of Procedure, the WRB includes in its list of duties and powers the authority "[t]o hear and decide appeals, as provided for by law, from acts or decisions of the Secretary of the Agency of Natural Resources and the Commis-

sioner of the Department of Environmental Conservation." Water Resources Board Rules of Procedure Rule 1(B)(2), 6 Code of Vermont Rules 12 004 001-3 (2002). The rules do not mention hearing appeals from district decisions. The WRB's own interpretation of its statutory authority is reasonable and comports with our reading of the applicable statutes. On that basis, we must accord it deference.

¶ 20. Based on our reading of the relevant statutes, prior case law, and legislative history, we find that the WRB lacks jurisdiction to hear appeals from agricultural dam permit decisions of the natural resource conservation districts. At oral argument, appellants insisted that a V.R.C.P. 75 appeal to the superior court could not be the correct forum for this case. They based their contention on the fact that under Rule 75 it is unclear whether appellants would receive a de novo review in superior court and which tribunal should create a record for appellate review. We acknowledge that what level of scrutiny this case should receive in superior court and how a record should be created remain open questions, ones that should be decided in the first instance by the superior court. See V.R.C.P. 75(d).

*Affirmed.*