NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 60

No. 2016-323

| | |
|---|---|
| Shires Housing, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Civil Division |
| | |
| Carolyn S. Brown and William A. Shepard, II | March Term, 2017 |

John W. Valente, J.

Michael S. Munson of Barr, Sternberg, Moss, Silver & Munson, PC, Bennington, for
 Plaintiff-Appellee.

Maureen A. O'Reilly, Vermont Legal Aid, Inc., Rutland, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **EATON, J.**   This interlocutory appeal arises out of a mobile home park eviction in which landlord, Shires Housing, Inc., failed to provide tenant, Carolyn Brown, with written notice of tenancy termination before filing for eviction under the Mobile Home Parks Act.  The trial court denied defendant's Vermont Rule of Civil Procedure 12(b)(6) motion to dismiss, ruling that 10 V.S.A. § 6237(a)(3) contains an exception to the notice requirement.  Because we conclude that the relevant provision of the Mobile Home Parks Act is ambiguous and because the available tools of statutory interpretation all indicate that the Act requires preeviction notice, we reverse.

¶ 2.    Tenant and her cotenant leased lot 19 in landlord's Willows Mobile Home Park in Bennington, Vermont.  Tenant's lease prohibited "any criminal activity including illegal drug-

related activity on or near the premises" and stated that "such criminal activity shall be cause for termination of the tenancy." The lease also required the park owner or manager to "provide the [r]esident with written notice of the reason for an intended eviction." On February 29, 2016, landlord filed a complaint for eviction against tenant and her cotenant, alleging cotenant and a guest engaged in illegal drug-related activity on the premises. It is undisputed that landlord did not provide written notice prior to initiating the eviction proceedings.

¶ 3. Landlord served tenant with a complaint for ejectment on March 24, 2016. On April 14, 2016, tenant filed a motion to dismiss, arguing that: (1) the complaint failed to allege prior notice, which she argued was required under 10 V.S.A. § 6237(a)(2); (2) Rule 12.2.1 promulgated by the Department of Housing and Community Development (the Department) required prior notice unless the tenant had committed another violation within the last six months; and (3) landlord failed to attach a copy of the lease to the complaint, as required by 12 V.S.A. § 4852 and 10 V.S.A. § 6204(c) (applying 12 V.S.A. § 4852 to rental of mobile homes). Landlord filed a response on April 28, 2016, arguing: (1) under 10 V.S.A. § 6237(a)(3), no prior written notice is required when the cause for termination is a substantial lease violation; (2) the agency rule conflicts with § 6237 and should be overturned; and (3) a copy of the lease was attached to the complaint.

¶ 4. The trial court denied tenant's motion to dismiss, ruling that § 6237(a) unambiguously contains an exception to the notice requirement when a tenant causes a substantial violation of the lease terms. In reaching that conclusion, the court noted that two other trial courts had considered the same question and had ruled in favor of the tenants, although the courts did so on different grounds. Compare Garden Homes Mgmt. Corp. v. Marchand, No. 251-7-12 Bncv, slip op. (Vt. Super. Ct. Sept. 18, 2012) (finding statute ambiguous and deferring to agency interpretation), with Bean v. Bickford, No. 164-05-08 Cacv, 2009 WL 8019257 (Vt. Super. Ct. May 22, 2009) (finding that statute unambiguously does requires "extra requirement of notice" of

2

intent to intiitate eviction proceeding). The court also acknowledged that its conclusion was "the opposite of the one reached by the Department." The court nevertheless found that the plain meaning of § 6237(a) created "an exception to the notice requirement in the event that there is a substantial violation of a lease term."

¶ 5. On July 22, 2016, tenant requested permission to file an interlocutory appeal, arguing the issue of written notice of tenancy termination is a controlling question of law about which there exists a substantial ground for difference of opinion. See V.R.A.P. 5(b) (providing that "superior court must permit an appeal from an interlocutory order or ruling" if order or ruling "involves a controlling question of law about which there exists substantial ground for difference of opinion" and immediate appeal "may materially advance the termination of the litigation"). The court granted permission, citing the two previous contradictory trial court decisions and the lack of caselaw from this Court to guide the trial courts.

¶ 6. On appeal, tenant argues the trial court's order should be reversed for three reasons. First, an ejectment action cannot proceed in the absence of a written notice of tenancy termination. Second, the trial court incorrectly found § 6237(a) to be clear on its face. Third, the trial court should have deferred to the Department's rule. We agree with tenant that 10 V.S.A. § 6237(a) is ambiguous, and that the maxims of statutory construction support tenant's construction of the statute. We therefore reverse.[1]

¶ 7. We review a trial court's decision on a motion to dismiss de novo, applying the same standard as the lower court and taking to be true all facts as pleaded in the complaint, without considering "contravening assertions" in the defendant's pleadings. Birchwood Land Co. v.

---

[1] Tenant did not argue at the trial court or in the present appeal that landlord violated the terms of her lease by failing to provide "written notice of the reason for an intended eviction" as required in the lease. This Court will not address an issue on appeal that the parties did not raise below, nor will we search the record for error. Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459, 752 A.2d 26, 33 (2000).

3

Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009.  Accordingly, our review "is limited to determining 'whether the bare allegations of the complaint are sufficient to state a claim.' "  Id. (quoting Kaplan v. Morgan Stanley & Co., 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.)).

¶ 8.    Our review begins with the language of the statute.  Section 6237(a) provides:

> A leaseholder may be evicted only for nonpayment of rent or for a substantial violation of the lease terms of the mobile home park . . . and only in accordance with the following procedure:
>
> . . . .
>
> (2) Prior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder by certified or registered mail, except as provided in subdivision (3) of this subsection:
>
> (A)   of the grounds for an eviction proceeding;
>
> . . . .
>
> (3) A substantial violation of the lease terms, of the mobile home park, or an additional nonpayment of rent occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection may result in immediate eviction proceedings.

The parties' disagreement in this case involves the interplay between subsections (2) and (3). Specifically, tenant argues that the statutory language is unclear on its face, as evidenced by the fact that "the parties, several trial courts and the Department have found subsection (3) to be uncertain of meaning."  Landlord, on the other hand, argues that subsection (3) unambiguously does not require that a landlord provide notice to a tenant of the grounds for eviction prior to commencing eviction proceedings when the basis for the eviction proceeding is a substantial violation of the lease terms.  Because this case reaches this Court on an appeal from a decision on a motion to dismiss, we take to be true the facts that landlord alleged in its complaint below, namely, that the basis for the eviction proceeding constituted a substantial lease violation. Accordingly, the only question we must answer is whether the statute is ambiguous and if so, what the Legislature intended when it enacted § 6237(a).

¶ 9.    "Our primary objective in construing a statute is to effectuate the Legislature's intent." Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350.  In accomplishing this, our first step is to examine the statute's language because we presume that the Legislature intended the plain, ordinary meaning of the statutory language.  Id.  If a statute is clear on its face, we accept its plain meaning and will not rely on statutory construction, but where the language creates ambiguity or uncertainty, we resort to statutory construction to ascertain the legislative intent.  In re Hinsdale Farm, 2004 VT 72, ¶ 5, 177 Vt. 115, 858 A.2d 249.  In construing legislative intent, "we must consider the entire statute, including its subject matter, effects and consequences, as well as the reason for and spirit of the law."  Id.  Legislative history, circumstances surrounding a statute's enactment, and evidence of the legislative policy at which the statute was aimed are indications of the Legislature's intent.  Id.  Additionally, where a statute is silent or ambiguous and an agency charged with enforcing the statute has interpreted it, this Court will defer to the agency interpretation of the statute within its area of expertise.  In re Smith, 169 Vt. 162, 169, 730 A.2d 605, 611 (1999); C&S Wholesale Grocers, Inc. v. Dep't of Taxes, 2016 VT 77A, ¶ 13, __ Vt. __, 155 A.3d 169 ("We defer to agency interpretations of statutes the Legislature has entrusted to their administration . . . .").  " 'Absent compelling indication of an error, interpretation of a statute by an administrative body responsible for its execution will be sustained on appeal,' unless it is unjust or unreasonable."  Laumann v. Dep't of Public Safety, 2004 VT 60, ¶ 7, 177 Vt. 52, 857 A.2d 309 (quoting Bedini v. Frost, 165 Vt. 167, 169, 678 A.2d 893, 894 (1996)).

¶ 10.    The first question we must answer is whether § 6237(a) is ambiguous about what notice a landlord must provide a mobile home tenant prior to commencing eviction proceedings in the event of a substantial violation of the lease terms.  Giving the statutory language its plain and ordinary meaning, we conclude that it is ambiguous.

¶ 11.    As structured, the statute starts with the premise that all mobile home park eviction actions must be preceded by notice, unless an exception to the notice requirement applies.  See 10

V.S.A. § 6237(a)(2) ("Prior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder by certified or registered mail, except as provided in subdivision (3) of this subsection: (A) of the grounds for an eviction proceeding . . . . "). The exception to the notice requirement in subsection (3) is therefore the focus of our interpretation. Subsection (3) provides that "[a] substantial violation of the lease terms, of the mobile home park, or an additional nonpayment of rent occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection may result in immediate eviction proceedings." Id. § 6237(a)(3). Landlord argues that the "plain and clear meaning" of that sentence "is that the park owner must notify the leaseholder prior to commencing an eviction proceeding unless the grounds for the eviction is a substantial violation of the lease terms, or a second instance of nonpayment of rent within six months." However, that is not what the statute says.

¶ 12. Rather, subsection (3) is unclear about whether the phrase "occurring within six months" refers only to "an additional nonpayment of rent" or if it also applies to "[a] substantial violation of the lease terms." Id. Had the Legislature intended to give the statute the meaning landlord suggests, it would have been more logical to place the exception that landlord seeks—no notice required following a substantial lease violation—in its own subsection, instead of placing it with an exception that is triggered only after the leaseholder has engaged in an "additional" violation "within six months." See id. Likewise, to read the statute as landlord suggests would read the word "any" out of § 6237(a)(2), which says "[p]rior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder." (Emphasis added). The most plain and ordinary meaning of the word "any" is "every," indicating that § 6237(a)(2)'s rule applies to all eviction proceedings. See Any, The American Heritage Dictionary of the English Language (5th ed. 2017), https://ahdictionary.com/word/search.html?q=any [https://perma.cc/4ZCD-49GK].

¶ 13. Additionally, as the trial court observed in Sunset Lake Villa Associates v. Miller, in its attempt to interpret the language at issue in this case, "the provision is poorly worded and

6

confusing, primarily because it appears to be missing a comma between the words 'rent' and 'occurring,' " and "[i]t would not be logical to first say that all evictions, including those for substantial violations, must be done with notice, and then say that ones for substantial violations do not need notice." Sunset Lake Villa Assocs. v. Miller, No. 416-4-15 Cncv, slip op. at 2 (Vt. Super. Ct. July 6, 2015); see also Garden Homes, No. 251-7-12 Bncv, slip op. at 3 (Vt. Super. Ct. Sept. 18, 2012) ("10 V.S.A. § 6237(a)(3) is ambiguous about when a park owner must give notice before starting an eviction proceeding."). We agree.

¶ 14.    In short, it is unclear from the language of the statute itself whether the Legislature intended to exempt substantial lease violations from the notice requirement or if instead the Legislature intended the statute to require no notice after a second substantial lease violation within six months of a first substantial lease violation. Even if landlord is correct that the Legislature intended to create a general rule in § 6237(a)(2)—notice is required—and then lay out exceptions to that rule in § 6237(a)(3)—notice is not required—the statute is sufficiently confusing to render it susceptible to more than one interpretation. Because we conclude that the statute is ambiguous, and because the agency charged with enforcing the statute has attempted to define it, we must "seek out the interpretation intended by the statute's drafters." See In re Agency of Admin., 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982).

¶ 15.    When this Court interprets the language of an ambiguous statute, we look to a variety of sources to ascertain legislative intent. In cases where the Legislature has delegated power to an executive branch agency to implement a statute's overall objectives, those sources include the agency's own interpretation of the statute insofar as the interpretation is within the agency's area of expertise, legislative history, and other evidence of the legislative policy at which the contested provision was aimed. In re Hinsdale Farm, 2004 VT 72, ¶ 5. What is within an agency's area of expertise depends on the statutory scheme at issue; here the Department's areas of expertise are community block grants, housing programs, and local and regional planning and

7

coordination. 3 V.S.A. § 2472. As such, this Court owes deference to the Department to the extent that its interpretation of 10 V.S.A. § 6237(a)(2)-(3) draws on its expertise with respect to housing programs and implementation of housing programs—the broad subject of the Mobile Home Parks Act—while grammatical construction of the statutory language is a matter traditionally reserved for the judicial branch. Cf. In re Smith, 169 Vt. at 169-70, 730 A.2d at 611 (acknowledging that agency is entitled to deference for matters within agency's area of expertise but that agency is not entitled to deference for question of burden of proof required because "court is the traditional and most appropriate forum to prescribe a standard"); Hansen v. C.W. Mears, Inc., 486 N.W.2d 776, 779 (Minn. Ct. App. 1992) ("An agency's decisions are given some deference in its area of expertise and field of technical training, education and experience. However, when reviewing legal conclusions by an agency, this court need not defer to the agency's decision." (citations omitted)). With this in mind, we begin our analysis by looking to the Department's interpretation of the statute.

¶ 16. The Legislature charged the Department with creating rules to interpret and enforce the purposes of the Mobile Home Parks Act—namely, " 'to protect the health, safety and welfare of the residents of mobile home developments.' " State Agency of Dev. & Cmty. Affairs v. Bisson, 161 Vt. 8, 14, 632 A.2d 34, 38 (1993) (quoting 1969, No. 291 (Adj. Sess.), § 2). The Department adopted Rule 12.2.1, pursuant to 10 V.S.A. § 6231(b), which authorizes it to "adopt rules to carry out" the Mobile Homes Park Act. The Rule provides:

> No notice shall be required if . . . a substantial violation is the second such occurrence within 6 months, and proper notice was provided with respect to the first non-payment or substantial violation during the period.

Housing Division Rules Part I: Mobile Home Parks, Code of Vt. Rules 11 020 001, http://www.lexisnexis.com/hottopics/codeofvtrules/ [https://perma.cc/4YZV-QN32]. The Rule interprets § 6237 to mean that a landlord is not required to give a tenant notice of eviction when

8

the tenant commits a second substantial violation within six months. The notice required by a landlord before initiating eviction proceedings is not clearly stated in the statute, and the Department's interpretation provides clarity by stating "[n]o notice shall be required if the nonpayment of rent or a substantial violation is the second such occurrence within 6 months." Rule 12.2.1. The trial court found that the Rule conflicts with the statute based on its conclusion that the statutory language is unambiguous, and the court therefore did not consider the Legislature's intent in its analysis.

¶ 17.    We also find support for tenant's position in the context of the Legislature's intent. Legislative "intent is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences." Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 50, 527 A.2d 227, 228 (1986). The Legislature that enacted § 6237 found "that 'there is a substantial need for new housing . . . for moderate and low-income groups, which need is likely to increase in the future,' " and that " 'most of the new housing available to moderate and low-income groups consists of mobile homes.' " Bisson, 161 Vt. at 14, 632 A.2d at 38 (quoting 1969, No. 291 (Adj. Sess.), § 1(d), (e)). Thus, the Legislature clearly sought to protect mobile home park residents. As we emphasized in Bisson, "an underlying purpose of the Mobile Home Parks Act" is "to give mobile home owners, who can move their homes only at some cost and with some inconvenience, additional protection against arbitrary eviction." Id. at 13-14, 632 A.2d at 38. Providing leaseholders with notice grants them an opportunity to defend against the charges or prepare for their otherwise latent eviction, while granting mobile home renters more protection than mobile home owners would run afoul of the Legislature's intent.

¶ 18.    As the trial court recognized, its decision afforded greater protection to renters of mobile homes than owners of mobile homes because renters have a right to at least fourteen days' notice for substantial lease violations under Title 9, but it failed to address how this result is consistent with the statute's express goal of protecting mobile home residents. That the Legislature

9

intended to provide additional protections for mobile home park residents is evidenced by the language of the statute and its legislative history. Specifically, the Legislature expressed that mobile home housing accomodates low and moderate income groups, and the use of the word "only" in § 6237(a) indicates the Legislature's intent to limit the circumstances under which park residents may be evicted. This protection acknowledges the limited space availability and expense of moving mobile homes and seeks to protect mobile home park residents. Additionally, the Legislature has not seen fit to amend § 6237(a)(2)-(3) since the statute's enactment in 1973. 1973, No. 264 (Adj. Sess.), § 2. That fact is relevant because we presume that the Legislature is aware of the backdrop against which it is legislating, and its failure to act when the Department has interpreted the statute is an indication that the Department's interpretation aligns with the Legislature's intentions. See Lydy v. Trustaff, Inc., 2013 VT 44, ¶ 11, 194 Vt. 165, 76 A.3d 150 (considering Legislature's failure to amend statutory language in light of agency interpretation and concluding that Legislature's silence implies Legislature's agreement with agency interpretation).

¶ 19. Moreover, in 2011, the Legislature added the following language to § 6237(a)(4): "[a] substantial violation of the lease terms based upon criminal activity will be insufficient to support a judgment of eviction unless the proceeding is commenced no later than 60 days after arraignment." 10 V.S.A. § 6237(a)(4); 2011, No. 137 (Adj. Sess.), § 2. This amendment demonstrates the Legislature's intent to protect mobile home park residents by preventing park owners from erroneously evicting residents because of a prior crime. Although the Act is also intended " 'to protect the health, safety and welfare of the residents of mobile home developments,' " Bisson, 161 Vt. at 14, 632 A.2d at 38 (quoting 1969, No. 291 (Adj. Sess.), § 2), we cannot support landlord's contention that requiring notice would be contrary to the Legislature's intent by preventing owners from speedily evicting persons charged with criminal activities. The statute and the Department Rule require only that notice be provided before an eviction action is brought, so the delay occasioned by providing the required notice need not be

significant. Further, the mobile home owner shall have "three months from the date of execution of a writ of possession" to remove or sell the mobile home, unless the Court orders differently. 10 V.S.A. § 6237(e) (emphasis added). Therefore, requiring notification does not put the safety and welfare of park residents at risk because the statute permits an evictee to remain in the park for up to three months. Providing notice, even for initial substantial violations of lease terms, does not hinder a park owner's ability to timely evict a noncompliant tenant.

¶ 20. The Department Rule aligns with the purpose of the Mobile Home Parks Act—to provide additional protections for mobile home owners due to the limited availability of space and the high cost of relocating mobile homes—and the Department's interpretation relies on its area of expertise by ensuring that the statutory scheme it is charged with enforcing is given its intended meaning. See Bisson, 161 Vt. at 14, 632 A.2d at 38. In light of the legislative history and the purpose of the statute, the agency's interpretation of the Rule is not clearly erroneous. Therefore, in the absence of notice required by the Rule, dismissal under V.R.C.P. 12(b)(6) was the appropriate remedy. See Sweet v. Roy, 173 Vt. 418, 449, 801 A.2d 694, 717 (2002).

Reversed.

FOR THE COURT:

_____
Associate Justice

¶ 21. **SKOGLUND, J., dissenting.** A cotenant engaged in drug activity in tenant's mobile home; this illegal activity substantially violated the lease for the lot where tenant's mobile home is located. Subsequently, and without providing tenant with written notice of the intent to initiate eviction proceedings, landlord commenced eviction proceedings by filing a complaint against tenant in superior court. Landlord's action was supported by 10 V.S.A. § 6237(a), which

11

demonstrates a plain legislative intent to dispense with notice when a leaseholder commits a substantial violation of the lease terms. I dissent.

¶ 22. The relevant part of 10 V.S.A. § 6237(a) provides:

A leaseholder may be evicted only for nonpayment of rent or for a substantial violation of the lease terms of the mobile home park . . . and only in accordance with the following procedure:

. . . .

(2) Prior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder by certified or registered mail, except as provided in subdivision (3) of this subsection:

(A) of the grounds for an eviction proceeding;

. . . .

(3) A substantial violation of the lease terms, of the mobile home park, or an additional nonpayment of rent occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection may result in immediate eviction proceedings.

(4) A substantial violation of the lease terms, other than an uncured nonpayment of rent, will be insufficient to support a judgment of eviction unless the proceeding is commenced within 60 days of the last alleged violation. A substantial violation of the lease terms based upon criminal activity will be insufficient to support a judgment of eviction unless the proceeding is commenced no later than 60 days after arraignment.

¶ 23. I fail to see the ambiguity. 10 V.S.A. § 6237(a)(2) sets forth the general rule that any eviction proceeding requires notice and, in the same sentence, indicates that exceptions to the general rule exist in § 6237(a)(3) (stating that "<u>except</u> as provided in subdivision (3) of this subsection" (emphasis added)). Subsection (a)(3) then provides two events that can support immediate eviction proceedings: a "substantial violation of the lease terms" or a "an additional nonpayment of rent occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection." Thus, a park owner may begin eviction proceedings against a

12

leaseholder without notice if the lease is substantially violated or if, within six months of receiving the eviction-proceeding notice under subdivision (2), the leaseholder failed to pay rent for a second time. Because the statute's meaning is plain on its face, I would give effect to this meaning. See Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) ("The [plain meaning] rule provides that when the meaning of a statute is plain on its face it must be enforced according to its terms and there is no need for construction . . . .").

¶ 24.    More important, this plain reading comports with the overall structure of § 6237 and evinces the Legislature's clear intent to treat eviction proceedings involving "substantial violations of the lease" differently from other eviction proceedings. Hill, 143 at 93, 463 A.2d at 233 ("Underlying all other rules of construction is the fundamental rule that we must ascertain and give effect to the true intent of the legislature . . . ."). In particular, § 6237's procedural mechanics for eviction proceedings create a progressive scheme tied to the leaseholder's culpability for lease violations. For those instances that the leaseholder bears no fault—"a change in use of the park land or parts thereof or a termination of the mobile home park"—he or she must have notice prior to an eviction proceeding. Id. § 6237(a), (a)(2) (providing no exception for these proceedings). Similarly, notice is still required the first time that a leaseholder does not pay rent. Id. § 6237(a)(3). But if the leaseholder does not pay rent within six months of an initial nonpayment of rent that triggers an eviction proceeding, this second failure by the leaseholder to pay rent can result in immediate eviction and does not require notice to initiate the proceeding. Id. Finally, a leaseholder who substantially violates the lease is not entitled to notice. This graduated scheme balances a leaseholder's interest with the park owner's interest by decreasing the leaseholder's procedural protections relative to the harm the leaseholder causes the park owner and any other leaseholders in the mobile home park. Similarly, this scheme provides the leaseholder with an opportunity to cure a violation if the violation does not rise to a substantial level.

¶ 25. Moreover, even though the upshot of this procedural system is that a leaseholder who commits a substantial lease violation has fewer procedural protections, the Legislature still provided some protections for leaseholders who commit substantial lease violations. Under § 6237(a)(4), eviction proceedings for substantial violations of the lease terms must start within "60 days of the last alleged violation" or "no later than 60 days after arraignment." These time limits are specific to violations of lease terms. Likewise, if a court enters an order of eviction, the court always retains the discretion to determine how and when an evicted leaseholder must comply with the eviction order. Id. § 6237(e)(2) (stating that "order of eviction pursuant to this section shall provide that a leaseholder shall sell a mobile home or remove a mobile home from the mobile home park: (1) within three months from the date of execution of a writ of possession . . . ; or (2) within another period ordered by the Court in its discretion").

¶ 26. Overall, the plain language indicates that the Legislature set up a balanced notice scheme based on the character of the leaseholder's violation. This is consistent with the purpose of § 6237 as articulated by this Court: "[Section] 6237 provides owners and renters of mobile homes, who tend to be lower-income groups that may have difficulty finding alternative housing, added security from arbitrary eviction." State Agency of Dev. & Cmty. Affairs v. Bisson, 161 Vt. 8, 14, 632 A.2d 34, 38 (1993). The scheme described above is anything but arbitrary; it is a clear plan that provides equal weight to all of the competing interests, and the limited procedural protections for substantial violators of a lease reflect this balancing.

¶ 27. Despite this plain language, tenant and the majority point to two possible sources of ambiguity and conclude that, because of these claimed ambiguities, the Department of Housing and Community Development's interpretation of the statute should be given deference. As tenant states, to be ambiguous, the statute must be capable of more than one interpretation. See Ambiguity, Black's Law Dictionary (10th ed. 2014) ("An uncertainty of meaning based not on the scope of a word or phrase but on a semantic dichotomy that gives rise to any of two or more quite

14

different but almost equally plausible interpretations."). But § 6237's language does not support more than one plausible interpretation.

¶ 28. The first claimed ambiguity is that "subsection (3) is unclear about whether the phrase 'occurring within six months' refers only to 'an additional nonpayment of rent' or if it also applies to '[a] substantial violation of the lease terms.' " Ante, ¶ 12. But this phrase is ambiguous only if a reader ignores a basic tenet of the English language: "[I]f a participial phrase does not start a sentence, it should modify the noun, pronoun, or noun phrase that most closely precedes it." See B. Garner, The Redbook: A Manual on Legal Style § 10.29(b) (2d ed. 2006). Here, the phrase "occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection" is a present participial phrase that modifies the noun that closely precedes it—in this case, "nonpayment." No rule of language suggests that the participial phrase modifies "[a] substantial violation of the lease terms."

¶ 29. The absurdity of this reading becomes clear after examining the two trial court cases relied on by the majority: Sunset Lake Villa Associates v. Miller, No. 416-4-15 Cncv, slip op. (Vt. Super. Ct. July 6, 2015) and Garden Homes Management Corp. v. Marchand, No. 251-7-12 Bncv, slip op. (Vt. Super. Ct. Sept. 18, 2012). In Garden Homes Management Corp., the trial court confronted a similar issue involving a landlord's failure to notify a leaseholder of eviction proceedings for a substantial violation of the lease terms. Garden Homes Managment Corp., No. 251-7-12 Bncv, slip op. at 2. The trial court first looked to the Department's rule interpreting § 6237, which states that notice will not be required if "a substantial violation is the second such occurrence within 6 months." Housing Division Rules Part I: Mobile Home Parks, Code of Vt. Rules 11 020 001, Rule 12.2.1, http://www.lexisnexis.com/hottopics/codeofvtrules/ [https://perma.cc/4YZV-QN32]. Based on the Department's interpretation, the trial court

15

concluded an ambiguity existed and applied the Department's rule.[2] <u>Garden Homes Mgmt. Corp.</u>, No. 416-4-15, slip op. at 5. Subsequently, the trial court in <u>Sunset Lake Villa Associates</u> relied on <u>Garden Homes Management Corp.</u> and further noted that § 6237 "is poorly worded and confusing, primarily because it appears to be missing a comma between the words 'rent' and 'occurring.' " <u>Sunset Lake Villa Associates v. Miller</u>, No. 416-4-15, slip op. at 2. As a result, according to the trial courts, the Department, and the majority, a properly punctuated version of § 6237 would include a comma between "rent" and "occurring." See <u>ante</u>, ¶ 13.

¶ 30. This phantom comma creates an ambiguity where none was present.[3] As explained above, the phrase "occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection" is a present participial phrase that modifies the noun "nonpayment." See 10 V.S.A. § 6237(a)(3). To ensure a reader's understanding, a present participial phrase should be placed close to the noun or pronoun it modifies. See Garner, <u>supra</u>, § 10.29(b). A comma before the present participial phrase creates a dangling participial phrase; that is, the phrase is "dangling" because it is unclear what the phrase modifies. <u>Id.</u> § 10.29(c); see also Univ. of Chicago, Chicago Manual of Style § 5.112 (16th ed. 2010) ("A participle that has no syntactical relationship with the nearest subject is called a <u>dangling participle</u> or a <u>dangler</u>. Often, the sentence

---

[2] The trial court's circular reasoning in <u>Garden Homes Management Corp.</u> ignores our precedent. A court should look to the agency interpretation to determine the meaning of a statute only if the court first determines that the statute is ambiguous. See <u>In re Peel Gallery of Fine Arts</u>, 149 Vt. 348, 351, 543 A.2d 695, 697 (1988) ("[W]e only need to look to the administrative construction of the regulation if the meaning of the words used is in doubt." (quotation omitted)). An agency's incorrect interpretation of a statute does not establish that the statute is ambiguous. <u>Delozier v. State</u>, 160 Vt. 426, 434, 631 A.2d 228, 232 (1993) (stating that "to the extent that a rule conflicts with the statute, the rule cannot be sustained").

[3] Moreover, the presence or absence of punctuation should not influence the court's construction where, as in this case, the intent of the Legislature may be determined from consideration of the statute as a whole. <u>Hill</u>, 143 Vt. at 94, 463 A.2d at 234 ("[I]t is the general rule that punctuation, per se, forms no part of a statute and will not govern its construction as against the manifest intent of the [L]egislature ascertained from a consideration of the statute as a whole.").

is illogical . . . ."). Here, placing a comma between "rent" and "occurring" would create a dangler and result in an ambiguity because it would be unclear whether the phrase modified "substantial violation of the lease terms" or "an additional nonpayment of rent." In other words, the phantom comma produces the very ambiguity that the majority claims already exists. Rather than manufacture an ambiguity out of thin air, I would follow the clear intent of the language: the present participial phrase "occurring within six months of the giving of the notice referred to in subdivision (2) of this subsection" modifies "nonpayment," the closest noun preceding the phrase. Garner, supra, § 10.29(b).

¶ 31. The second claimed ambiguity involves the interplay between § 6237(a)(2) and § 6237(a)(3). The argument is that, because § 6237(a)(2) states that "prior to the commencement of any eviction proceeding" a park owner must provide notice to a leaseholder, notice is required regardless of the violation type. This argument ignores several key components of the statute's plain language. Most important, it reads out the third phrase in § 6237(a)(2), which provides exceptions to the general notice requirement. Id. ("Prior to the commencement of any eviction proceeding, the park owner shall notify the leaseholder by certified or registered mail, except as provided in subdivision (3) of this subsection . . . ." (emphasis added)). Similarly, this argument disregards the word "additional" in § 6237(a)(3). In that section, the Legislature modified "nonpayment of rent" with the word "additional," id., but omitted the word "additional" when it described a "substantial violation of the lease terms." Id. (listing "an additional nonpayment of rent" (emphasis added)). If all violations required notice, the Legislature would not have used the word "additional" to distinguish between "nonpayment of rent" and "substantial violation of the lease terms." Finally, as described above, the phrase "occurring within six months of the giving of the notice referred to in subdivision (2)" modifies "nonpayment of rent." Combined with the word "additional," the phrase creates distinct procedural protections for leaseholders who fail to

17

pay rent. By ignoring these phrases and their function in the statute, tenant and the majority argue that § 6237 is ambiguous; however, the better course is to give effect to all parts of the statute.

¶ 32. In short, § 6237's language is not ambiguous. I would stand on the statute's plain language, which creates a graduated procedural scheme depending on the type of violation. In this case, tenant committed a substantial violation of the lease terms; as a result, landlord was not required under 10 V.S.A. § 6237(a)(3) to provide notice before initiating eviction proceedings.

_____

Associate Justice

18