2011 VT 104

**In re SP Land Company, LLC, et al. Act 250 Land Use Permit Amendment (Mountainside Properties, LLC, Appellant)**

[35 A.3d 1007]

No. 10-332

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 22, 2011

C. *Daniel Hershenson* and *Amy Clarise Ashworth* of *Hershenson, Carter, Scott & McGee, P.C.*, Norwich, for Appellant.

*Timothy Eustace* and *Ross Feldmann* of *Gravel and Shea*, Burlington, for Appellees.

¶ 1. **Johnson, J.** This appeal arises out of a dispute over an administrative amendment to the master development plan for Killington Resort Village granted to its co-applicants, the current owners of Killington Resort Village and SP Land Company. The District One Environmental Commission originally granted this administrative amendment — authorizing the creation of fifteen subdivided lots over approximately 368 acres of Killington Resort Village for transfer to SP Land Company for "future development purposes" — pursuant to Act 250 Rule 34(D). Mountainside Properties, LLC, an adjoining property owner, appeals the Environmental Court's denial of its motion to alter and amend a grant of summary judgment in favor of co-applicants. Mountainside argues that the Environmental Court erred because: (1) administrative amendments under Rule 34(D) require an underlying Act 250 land use permit, and (2) co-applicants' fifteen-lot subdivision cannot be approved without demonstrating compliance with all Act 250 criteria under 10 V.S.A. § 6086(a), as required by 10 V.S.A. § 6081(a). We agree and therefore reverse.

¶ 2. The relevant procedural history is as follows. In 1998, the former owners of Killington Resort Village applied to the District One Environmental Commission (District Commission) for master plan review of the Killington Resort Village Master Development Plan ("Killington master plan") pursuant to then-existing Environmental Board Rules 10(c) and 21 and Master Permit Policy and Procedure for Partial Findings of Fact (master permit policy). The master permit policy allowed for review of specific Act 250 criteria

under § 6086(a) for complex development projects to streamline the review process and reduce costs to applicants.

¶ 3. In 1999, the District Commission issued partial findings of fact and conclusions of law regarding the Killington master plan. It made affirmative findings for five criteria and subcriteria under § 6086(a) and issued a "weather report" for each of the remaining criteria and subcriteria. No Act 250 land use master permit was issued. Pursuant to the master permit policy, the purpose of these partial findings was to assist the applicant and parties by providing notice of factual deficiencies in the application that resulted in a failure to achieve affirmative findings. The five affirmative findings were binding on all parties to the application for a period of five years.

¶ 4. The Vermont Natural Resources Council, a party to the master plan review proceedings, and the former owners of Killington Resort Village appealed some of the partial findings of fact and conclusions of law made by the District Commission to the Environmental Board. The Board determined that it had appellate jurisdiction to review only those criteria and subcriteria for which the District Commission had made affirmative findings, and therefore entered an order regarding a limited number of the § 6086(a) subcriteria. The Board's decision and order did not include an Act 250 land use permit.

¶ 5. The partial findings of fact and conclusions of law for the Killington master plan subsequently received two amendments prior to the administrative amendment at issue here. The first, an administrative amendment issued in March 2004 pursuant to Rule 34(D), authorized the subdivision of approximately 470 acres of Killington Resort Village into nine lots. The second, issued in August 2004, renewed the District Commission's 1999 partial findings of fact and conclusions of law for another five-year period. Neither amendment included an Act 250 land use permit.

¶ 6. At the end of 2007, co-applicants (successors in title to the original permittee) discussed with the District Commission's district coordinator options for obtaining a third amendment to the Killington master plan for another proposed subdivision. The district coordinator recommended applying for an administrative amendment pursuant to Rule 34(D), which allows a district coordinator "to amend a permit . . . when . . . necessary for record-keeping purposes or to provide authorization for minor revisions to permitted projects raising no likelihood of impacts

under the criteria of [§ 6086(a)]." 6 Code of Vt. Rules 12 004 060-15, available at http://www.michie.com/vermont. The district coordinator suggested Rule 34(D) because at that time over fifty different Act 250 permit series covered Killington Resort Village, the 1999 master plan review decision pertained to the entirety of Killington Resort Village, and no construction element was included in the proposed amendment.

¶ 7. Thus, in April 2008, co-applicants applied under Rule 34(D) for a third administrative amendment, despite not having an Act 250 land use permit. Co-applicants sought permission to realign the nine subdivided lots approved in the first administrative amendment into fifteen subdivided lots for transfer to SP Land for "future development purposes." The application listed Mountainside as an adjoining property owner. The district coordinator, with approval of the District Commission, granted the administrative amendment in May 2008 pursuant to Rule 34(D). The amendment stated that no development of the parcels was approved by the amendment and referred to itself as a "permit."

¶ 8. Mountainside then filed a motion with the District Commission to alter the third administrative amendment under Act 250 Rule 31(A).[1] Mountainside's motion questioned, among other things, the propriety of using Rule 34(D) to authorize the subdivision of 368 acres, arguing that the proposed subdivision likely involved more than minor record-keeping or minor revisions to an existing project. The District Commission denied Mountainside's motion to alter in October 2008.

¶ 9. Mountainside filed an appeal with the Environmental Court in November 2008. It submitted a list of fifteen questions for the court to address on appeal, the majority of which related to the fifteen-lot subdivision. The parties filed cross-motions for summary judgment. The Environmental Court granted summary judgment in favor of co-applicants on all fifteen questions, concluding that,

---

[1] The third administrative amendment specifically states that "[p]rior to any appeal of this Administrative Amendment to the Environmental Court, the applicant or a party must file a Motion to Alter with the District Commission within 15 days from the date of this Administrative Amendment, pursuant to Act 250 Rule 34." See Act 250 Rule 34(D)(2), 6 Code of Vt. Rules 12 004 060-15, available at http://www.michie.com/vermont. Motions to alter are covered by Rule 31(A), which requires that a moving party request alteration only on a "proposed reconsideration of the record," and that each requested alteration be numbered separately and be accompanied by a supporting memorandum of law. Act 250 Rule 31(A)(1), (2), 6 Code of Vt. Rules 12 004 060-12-13, available at http://www.michie.com/vermont.

under Rule 34(D), the fifteen-lot subdivision authorized by the third administrative amendment would cause no impact to any Act 250 criteria.

¶ 10. Mountainside subsequently filed a motion to alter and amend the Environmental Court's grant of summary judgment pursuant to Vermont Rule of Civil Procedure 59(e). It presented arguments similar to those presented here: absent an underlying Act 250 land use permit, no administrative amendment can issue under Rule 34(D), and co-applicants' fifteen-lot subdivision cannot be authorized without full review of all the criteria and subcriteria of § 6086(a).

¶ 11. The Environmental Court sought guidance from the Natural Resources Board Land Use Panel as to whether the absence of an Act 250 land use permit precludes issuing a Rule 34(D) administrative amendment to a master plan. The Land Use Panel's written response concluded that without an underlying permit there could be no administrative amendment under Rule 34(D) because there was nothing to amend under the process set out in that rule. The memorandum explained that the District Commission could issue Revised Master Plan Findings and Conclusions but these would not be issued under Rule 34, as Rule 34 addresses only permit amendments.

¶ 12. The Environmental Court nonetheless denied Mountainside's motion. The court reasoned that the third administrative amendment authorized only a reconfiguration of subdivision boundaries and did not authorize any development. The court further explained that a subdivision of Killington Resort Village had already been approved through the first administrative amendment issued in 2004 and, while that determination may have been "questionable," it had become final because no party filed a timely challenge to it. The court concluded that the challenged third administrative amendment merely authorized a realignment of the previously approved subdivision of Killington Resort Village. This appeal by Mountainside followed.

¶ 13. Mountainside argues that the Environmental Court erred in its grant of summary judgment to co-applicants because: (1) administrative amendments under Rule 34(D) require an underlying Act 250 land use permit, and (2) co-applicants' fifteen-lot subdivision cannot be approved without demonstrating compliance with all Act 250 criteria under 10 V.S.A. § 6086(a) as required by 10 V.S.A. § 6081(a). We employ our typical de novo standard for

questions of law.[2] *In re Village Assocs. Act 250 Land Use Permit,*
2010 VT 42A, ¶ 7 n.2, 188 Vt. 113, 998 A.2d 712 ("[W]here the
outcome of the matter turns not on findings of fact, but on
interpretation of a statutory term, and where we are not review-
ing a decision by an agency charged with promulgating and
interpreting its own rules, we employ the familiar de novo
standard of review for matters of law.").

█ ¶ 14. As a preliminary matter, we address co-applicants'
claim that Mountainside did not obtain party status for these
issues and should have been precluded from raising them before
the Environmental Court. They contend that Mountainside was
granted party status only on the question of whether it should be
joined as a co-applicant and point to the language of 10 V.S.A.
§ 8504(d)(1), which states that a person appealing an act or
decision made by a district commission "may only appeal those
issues under the criteria with respect to which the person was
granted party status." Co-applicants argue that Mountainside's
limited party status and the statute's limitation prevent Mountain-
side from raising issues relating to Rule 34(D) and the lack of
review of the proposed subdivision with respect to all Act 250
criteria. Co-applicants fail to note, however, that the District
Commission also granted Mountainside party status because it
had a particularized interest in co-applicants' application. Given
Mountainside's party status in this regard, we do not read 10
V.S.A. § 8504(d)(1) to prevent Mountainside from appealing proce-
dural matters relating to the use of Rule 34(D) to grant an
administrative amendment absent an underlying Act 250 land use
permit or the authorization of the subdivision absent full review of
the project under all Act 250 criteria.

█ ¶ 15. Nor are we persuaded that Mountainside waived its
argument concerning the applicability of Rule 34(D). Co-applicants

---

[2] Co-applicants urge us to afford the Environmental Court's interpretation of Rule
34(D) the same high level of deference we gave the former Environmental Board.
See *In re Wal\*Mart Stores, Inc.,* 167 Vt. 75, 79, 702 A.2d 397, 400 (1997) ("Absent
compelling indications of error, we will sustain [the Environmental Board's]
interpretations [of its own rules] on appeal."). This is not a case, however, where
we are dealing with an agency's interpretations of its own rules, see *In re
Nehemiah Assocs.,* 168 Vt. 288, 292, 719 A.2d 34, 36 (1998), but rather one where
we are reviewing a decision from a part of the judicial branch. Thus, separation-
of-powers concerns do not require deferential review here. *In re Albert,* 2008 VT
30, ¶ 6, 183 Vt. 637, 954 A.2d 1281 (mem.).

contend that this argument was improperly raised for the first time in Mountainside's Rule 59(e) motion to alter or amend and should not have been addressed by the Environmental Court. We disagree. Whether or not this issue was expressed for the first time in Mountainside's Rule 59(e) motion, it was a question of law intrinsic to the Environmental Court's summary judgment ruling and therefore well within the court's discretion to reconsider on Mountainside's Rule 59(e) motion.

¶ 16. Contrary to the dissent's narrow interpretation, Rule 59(e) "gives the court broad power to alter or amend a judgment." Reporter's Notes, V.R.C.P. 59. We have stated that Rule 59(e), largely identical to Federal Rule of Civil Procedure 59(e), is invoked " 'to support reconsideration of matters properly encompassed in a decision on the merits.' " *In re Robinson/Keir P'ship*, 154 Vt. 50, 54, 573 A.2d 1188, 1190 (1990) (quoting *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451 (1982)). Under this rule, "the court may reconsider issues previously before it, and generally may examine the correctness of the judgment itself." *Id.* (quotation omitted). That is, Rule 59(e) "codified the trial court's inherent power to open and correct, modify, or vacate its judgments." *Drumheller v. Drumheller*, 2009 VT 23, ¶ 28, 185 Vt. 417, 972 A.2d 176; see 11 C. Wright et al., Federal Practice and Procedure § 2810.1, at 124-25 (2d ed. 1995) (describing correction of manifest error of law upon which judgment is based as one of four basic grounds upon which Federal Rule of Civil Procedure 59(e) motion may be granted). The trial court enjoys considerable discretion in deciding whether to grant such a motion to amend or alter. 11 Wright, *supra*, § 2810.1, at 124.

¶ 17. Indeed, we have held that the court's power on a Rule 59(e) motion even extends to issues not raised in the motion. In *Drumheller*, we ruled that the trial court did not exceed its authority under Rule 59 when it considered an issue not raised in the party's Rule 59(e) motion. 2009 VT 23, ¶ 34. We found persuasive the approach taken by the majority of United States Courts of Appeal, recognizing that once a Rule 59(e) motion is filed, the trial court has the power to make an appropriate modification or amendment, including issues not raised in the Rule 59(e) motion. *Id.* ¶¶ 30-32. We explained that this approach struck "an appropriate balance between reconsideration and finality." *Id.* ¶ 33.

¶ 18. Here, the Environmental Court reconsidered an issue of legal interpretation "properly encompassed in a decision on the merits," which in no way offended the interests of finality. *In re Robinson/Keir P'ship*, 154 Vt. at 54, 573 A.2d at 1190 (quotation omitted). Whether Rule 34(D) can be used to amend a master plan absent affirmative findings on all Act 250 criteria was a matter of law integral to "the correctness of the judgment itself." *Id.* (quotation omitted). Indeed, the issue of whether a Rule 34(D) administrative amendment may be used to authorize a fifteen-lot subdivision absent positive findings on all Act 250 criteria is at the core of this case.[3] For example, Mountainside questioned the applicability of Rule 34(D) in a motion to alter submitted to the District Commission in May 2008. Specifically, Mountainside "request[ed] clarification regarding the applicability of Rule 34(D) to an application ostensibly authorizing the subdivision of 368.03 acres in[to] 15 lots of various acreage," stating that it was "unlikely that the subdivision as described involve[d] only minor record-keeping or minor revisions to an existing project." Contrary to the dissent's interpretation of this motion as "assum[ing] that [Rule 34] applied," *post*, ¶ 31, the motion questioned whether Rule 34(D) was applicable in these circumstances. Question 15 of Mountainside's statement of questions before the Environmental Court asked the court to consider "[w]hether or not a permit can be issued for the subdivision of 368.03 acres into 15 parcels absent positive findings of fact and conclusions of law demonstrating the subdivision meets and complies with all criteria of Act 250." Given the procedural history of this case, this question forced the Environmental Court to determine whether a Rule 34(D) administrative amendment could be used as an Act 250 land use permit to create a fifteen-lot subdivision when the subdivision had not received positive findings of fact on all Act 250 criteria.[4] And, indeed, the Environmental Court's December 2009 decision on the

---

[3] Although the dissent appears to place weight on the fact that there was no challenge to the first administrative amendment authorizing the subdivision of the same acreage, this has no bearing on the resolution of this issue. We do not reach back to the previous amendment when we resolve the issue before us of the third administrative amendment. We note, too, that the previous amendment authorized a nine-lot subdivision, and 10 V.S.A. § 6001(19) defines "subdivision" for purposes of Act 250 jurisdiction to include subdivisions of ten or more lots.

[4] The dissent agrees that question 15 asked whether the proposed fifteen-lot subdivision was proper without a review of the Act 250 criteria, but it mischaracterizes the crux of the question when it concludes that this "essentially

cross-motions for summary judgment ·concluded that the Rule 34(D) administrative amendment properly authorized the proposed subdivision in the absence of an Act 250 land use permit because no development was authorized.[5] It was thus well within the Environmental Court's discretion to fully reconsider this question of law on the merits upon Mountainside's Rule 59(e) motion. See *Osborn v. Osborn*, 147 Vt. 432, 433, 519 A.2d 1161, 1162-63 (1986) (explaining that Rule 59(e) motion allows trial court to revise initial judgment if necessary to relieve party of unjust operation of record resulting from mistake of court).

 ¶ 19. The dissent ignores the fact that the Environmental Court fully addressed on the merits the issue concerning the court's interpretation of governing law, and overlooks our longstanding view that Rule 59(e) affords trial courts the broad power to generally examine the correctness of a judgment itself. *Drumheller*, 2009 VT 23, ¶ 29; *In re Robinson/Keir P'ship*, 154 Vt. at 54, 573 A.2d at 1190. It focuses instead on our statement in *Northern Security Insurance Co. v. Mitec Electronics, Ltd.* that a Rule 59(e) motion may not be used to raise arguments that could have been raised prior to the entry of judgment. 2008 VT 96, ¶ 44, 184 Vt. 303, 965 A.2d 447. That case is entirely distinguishable. *Northern Security* involved an additional claim for relief, in contrast to the interpretation of law at issue here. There, we reversed a trial court that considered a reimbursement claim raised for the first time in a Rule 59(e) motion. *Id.* ¶¶ 44-46. The insurance company could have but did not, by its own admission, raise this particular claim for relief in its initial complaint; the company argued that it was not compelled to do so prior to the resolution of its claim that it was not obligated to bear the expenses for which it sought reimbursement. It was in *this* context that we stated that Rule 59(e) may not be used to raise arguments that could have been raised prior to the entry of

question[s] whether the proposed amendment was a material change under Rule 34 without challenging the rule's fundamental applicability absent an underlying Act 250 permit." *Post*, ¶ 32.

[5] Only after the Environmental Court concluded in this decision that no Act 250 land use permit existed but that the lack of authorized development created an exception to Act 250's required compliance with all criteria could Mountainside articulate its question regarding the court's legal interpretation of Rule 34(D) with the precision and clarity found in its Rule 59(e) motion; it was not, however, a new issue in the case.

judgment. *Id.* ¶ 44. In the case at hand, by contrast, the Rule 34(D) question is a matter of governing law intrinsic to the correctness of the Environmental Court's judgment, not an additional claim for relief. Indeed, we expressed in *Northern Security* itself that the goal of Rule 59(e) is to "make clear that the [trial] court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *Id.* ¶ 41 (quotation omitted). The Environmental Court properly exercised precisely this power when it reconsidered its interpretation of the applicability of Rule 34(D) to a master plan lacking affirmative findings on all Act 250 criteria.

¶ 20. Because the applicability of Rule 34(D) in these circumstances was fully considered on the merits by the Environmental Court, neither our preservation rule nor Rule 59(e) prevents us from considering it here. See *In re Barry*, 2011 VT 7, ¶ 29, 189 Vt. 183, 16 A.3d 613 (recalling that primary purpose of our rules on preservation is to give original forum opportunity to consider matter prior to our review); *Vt. Built, Inc. v. Krolick*, 2008 VT 131, ¶ 10, 185 Vt. 139, 969 A.2d 80 (stating that preservation rule was satisfied when trial court had fair opportunity to consider, evaluate, and rule upon question raised on appeal). We therefore conclude that Mountainside did not waive this argument and that it is appropriate for our review.

¶ 21. Mountainside first contends that the Environmental Court erred in approving co-applicants' third administrative amendment under Rule 34(D) because it is undisputed that there was no underlying Act 250 land use permit. Mountainside argues that the plain language of Rule 34(D) requires an Act 250 land use permit before an administrative amendment can issue under the rule. As described above, at no point was an Act 250 land use permit issued for this subdivision. Rather, the former owners of Killington Resort Village received partial findings of fact and conclusions of law on a master plan, resulting in affirmative findings for only five criteria and subcriteria under § 6086(a), which were binding for a specified period of time. It was this master plan that was amended through Rule 34(D).

¶ 22. Co-applicants do not contest that Rule 34(D) uses the word "permit." Rather, they point out that "permit" is not defined under either the Act 250 rules or the Act itself. Co-applicants therefore contend that "permit" in Rule 34(D) should be read to

include partial findings of fact and conclusions of law because, they argue, such partial findings and conclusions, which are binding on applicants and parties, create vested rights and thus have the same "force and effect" as an Act 250 land use permit. We thus turn to the meaning of "permit" as used in Rule 34(D).

¶ 23. We apply the same principles of construction to the rules governing Act 250 that we do to other statutes. See *In re CVPS/Verizon Act 250 Land Use Permit Numbers 7C1252 & 7C0677-2*, 2009 VT 71, ¶ 14, 186 Vt. 289, 980 A.2d 256. This includes the presumption that the drafters of the rules intended the plain and ordinary meaning of the language used in the rules. *Id.* Furthermore, words that have not been specifically defined should be accorded their plain and commonly accepted meanings. *Carter v. Gugliuzzi*, 168 Vt. 48, 52, 716 A.2d 17, 21 (1998).

¶ 24. In relevant part, Rule 34(D) states:

> A district commission may authorize a district coordinator to amend a permit without notice or hearing when an amendment is necessary for record-keeping purposes or to provide authorization for minor revisions to permitted projects raising no likelihood of impacts under the criteria of the Act.

Act 250 Rule 34(D)(1), 6 Vt. Code of Rules 13 004 060-14-15, available at http://www.michie.com/vermont. Based on a reading of Act 250 and the rules promulgated to implement it, we conclude that "permit" has a specific and accepted meaning in the Act 250 context, and it is this "permit" to which Rule 34(D) refers. Generally speaking, the Act prohibits parties from subdividing land or commencing development without a permit, and it delineates the circumstances in which a permit may issue. 10 V.S.A. §§ 6081(a), 6086(a); *In re CVPS/Verizon Act 250 Land Use Permit*, 2009 VT 71, ¶ 15. Section 6081(a) introduces the concept of the Act 250 land use permit and specifies that "[n]o person shall sell or offer for sale any interest in any subdivision located in this state, or commence construction on a subdivision or development, or commence development without a permit." Section 6086(a) forbids the issuance of such a permit absent a full substantive review of all ten statutory criteria under the Act. See *In re Woodford Packers, Inc.*, 2003 VT 60, ¶ 22, 175 Vt. 579, 830 A.2d 100 (mem.) ("Act 250 mandates that before granting a permit, the board or

district commission shall find that the subdivision or development meets *all* ten criteria under 10 V.S.A. § 6086." (quotation omitted)).

¶ 25. Even Act 250 Rule 21, which sets forth the procedure for review of projects under specified criteria or subcriteria, distinguishes between partial findings of fact and conclusions of law and "permit." Pursuant to this rule, a district commission may issue partial findings of fact and conclusions of law under the Act's criteria and subcriteria in order to minimize costs and inconvenience to applicants. Rule 21(F) clearly states that "[a] permit shall not be granted under this rule until the applicant has fully complied with all criteria and positive findings of fact and conclusions of law have been made by the district commission as required by the Act." Act 250 Rules, 6 Vt. Code of Rules 12 004 060-12, available at http://www.michie.com/vermont. With regard to master plan applications, it clarifies further that the district commission "may issue a master permit to the extent that the district commission has made positive findings of fact and conclusions of law under all criteria for any element or phase approved for construction." *Id.* In either context, Rule 21 mandates that a permit may issue only when positive findings of fact and conclusions of law have been made under *all* criteria and subcriteria. It follows, therefore, that findings of fact and conclusions of law on only some criteria — but not all — are not equivalent to a permit. Accordingly, we hold that Rule 34(D) applies solely to the Act 250 land use permit issued after full substantive review of all ten statutory criteria under 10 V.S.A. § 6086(a) and cannot apply to findings of fact and conclusions of law on fewer than all of the Act 250 criteria for a master plan.[6]

¶ 26. We now turn to Mountainside's argument — seemingly ignored by the dissent — that the Environmental Court erred by approving co-applicants' fifteen-lot subdivision without comprehensive review under all Act 250 criteria per § 6081(a). Looking to the statute, Mountainside asserts that such a subdivision requires an Act 250 land use permit, which, in turn, requires review of all criteria and subcriteria and positive findings

---

[6] Because we agree that the plain language of Rule 34(D) requires an Act 250 land use permit for the rule to apply, we do not reach Mountainside's additional argument that the Natural Resources Board Land Use Panel's interpretation of its own rule requires an Act 250 land use permit for an administrative amendment to issue under the rule.

on each. See 10 V.S.A. §§ 6081(a), 6086(a). Co-applicants dodge the statute. They offer no rebuttal to this interpretation of Act 250's strictures. Instead, co-applicants rely on Rule 34(D) to claim that using an administrative amendment to redraw lot lines on the master plan — without any proposed development — was a proper exercise of the District Commission's discretion. Co-applicants suggest that "[t]here is no reason an applicant should be forced to obtain an actual permit simply to make a technical amendment to a master plan." As already stated, Rule 34(D) cannot be used to amend a master plan absent the full review of all criteria necessary to obtain an Act 250 land use permit. Rule 34(D) notwithstanding, § 6081(a) and § 6086(a) prevent creation of the proposed subdivision absent full review of all criteria. This so-called "technical amendment"— which reconfigures a nine-lot subdivision into a fifteen-lot subdivision for transfer to another company for future development — triggers the subdivision juris-diction of Act 250, requiring a permit and the full review necessary to obtain one.

¶ 27. We turn to the statute. The Legislature has expressed its intent to require, in general, an Act 250 land use permit for both the subdivision and development of land. See *In re CVPS/Verizon Act 250 Land Use Permit*, 2009 VT 71, ¶ 15 (recognizing that Act 250 prohibits parties from subdividing land or commencing development without a permit); *In re Agency of Admin., State Bldgs. Div.*, 141 Vt. 68, 78, 444 A.2d 1349, 1353 (1982) (citing testimony by drafters of amendment to Act 250 definitions that permit requirement controls subdivisions and developments); see generally *In re Hinsdale Farm*, 2004 VT 72, ¶ 5, 177 Vt. 115, 858 A.2d 249 (recalling that our principal objective when interpreting statute is to implement legislative intent). Section 6081(a) specifically applies the permit requirement — the key to Act 250's compromise between conservation and development — to both subdivisions and development. See 10 V.S.A. § 6081(a) ("No person shall sell or offer for sale any interest in any subdivision located in this state, or commence construction on a subdivision or development, or commence devel-opment without a permit."); see also *In re Village Assocs.*, 2010 VT 42A, ¶ 17 (describing balance between conservation goals of Act 250 and economic necessity of development). Title 10 § 6001(19) defines "subdivision" for purposes of Act 250 as "a tract or tracts of land, owned or controlled by a person, which the

person has partitioned or divided for the purpose of resale into 10 or more lots within a radius of five miles of any point on any lot, or within the jurisdictional area of the same district commission, within any continuous period of five years."

¶ 28. Co-applicants' proposed fifteen-lot subdivision, which the current owners of Killington Resort Village seek to transfer to SP Land for future development, plainly falls under Act 250's permit requirement for subdivisions. See 10 V.S.A. §§ 6081(a), 6001(19). Thus, it is irrelevant that the master plan decision and the administrative amendment at issue here required further review under the remaining Act 250 criteria and subcriteria before any development could take place or that other Act 250 permit series cover Killington Resort Village for other purposes.[7] The Legislature's intent — as evidenced by the terms of Act 250 — contradicts co-applicants' claim that the proposed subdivision was a "minor change" and that full Act 250 review would be a "meaningless exercise." Rather, the statute makes clear that the Legislature intended full review under all Act 250 criteria and subcriteria for just this kind of substantial subdivision.[8]

*Reversed and remanded to the Environmental Division for further proceedings consistent with this opinion.*

¶ 29. **Reiber, C.J.,** dissenting. Although I am concerned that the majority opinion should not be interpreted as affecting the master plan rules, reducing their use by applicants, I dissent on a more fundamental ground. The issue the majority decides was not raised below in a timely and proper manner and therefore should not be reviewable on appeal. I do not necessarily disagree with the majority's holding that an administrative amendment under Act 250 Rule 34 may be inappropriate where, as here, a master plan application does not result in affirmative findings on all of the Act 250 criteria and a master plan permit. I would emphasize, however, that under the Master Permit Policy and Procedure a fully approved master plan application may well support a later

---

[7] We note that the District Commission's 1999 partial findings of fact and conclusions of law on the master plan have expired by their own terms; the second administrative amendment, issued in August 2004, renewed them for only another five years.

[8] Given our holding, we do not reach Mountainside's argument that the Environmental Court was statutorily required to consider Environmental Board precedent requiring a permit — and full Act 250 review — for similar subdivisions.

administrative amendment where it would not materially affect any Act 250 criteria.

¶ 30. Even with that understanding, however, I am compelled to conclude that the majority opinion is advisory because the question it addresses — whether an administrative amendment under Rule 34 requires an underlying Act 250 permit — was not raised with the trial court before the entry of judgment but only later in a Rule 59(e) motion to alter or amend. Nor was there a challenge to the subdivision alignment of the very same acreage allowed by the first administrative amendment in March 2004. As the majority acknowledges, it is well settled that a " 'Rule 59(e) motion may not be used · . . . to raise arguments . . . that could have been raised prior to the entry of judgment.' " *N. Sec. Ins. Co. v. Mitec Elecs., Ltd.*, 2008 VT 96, ¶ 44, 184 Vt. 303, 965 A.2d 447 (quoting 11 C. Wright et al., Federal Practice and Procedure § 28101.1, at 127-28 (2d ed. 1995)).

¶ 31. The majority acknowledges that the question it decides was not expressly raised with the trial court before entry of judgment, but asserts nevertheless that it was "at the core" of the case. *Ante,* ¶ 18. This is a stretch, considering that the only filing the majority references in this regard was a motion to alter submitted to the district commission questioning whether the proposed fifteen-lot subdivision qualified as a "record-keeping" or "minor revision" to an existing project under Rule 34(D). Far from challenging the fundamental applicability of Rule 34, therefore, the motion assumed that it applied but questioned whether it met the requisite criteria as a minor revision.

¶ 32. Mountainside avers that the question of whether an administrative amendment requires an underlying Act 250 permit was intrinsic to three of the fifteen issues set forth in its statement of questions, specifically Questions 1, 4, and 15. Question 1, however, merely asked whether Killington had filed a "complete application." Question 4 asked whether the application for administrative amendment required a preliminary evaluation under Rule 34(E), which sets forth a balancing test, weighing the interests of flexibility and finality. Thus, it assumed the applicability of Rule 34 and merely questioned whether its balancing requirements had been met. Question 15 arguably comes closer but again simply asked whether the proposed fifteen-lot subdivision was proper without a review of the Act 250 criteria; it essentially questioned whether the proposed amendment was a

material change under Rule 34 without challenging the rule's fundamental applicability absent an underlying Act 250 permit.

¶ 33. It is well settled that Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the [trial] court prior to the judgment." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); accord *Vallejo v. Santini-Padilla*, 607 F.3d 1, 7 n.4 (1st Cir. 2010) (noting that "[a]rguments that could have been raised before may not be raised for the first time in a motion for reconsideration" (quotation omitted)); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (stating that Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued" (quotation omitted)); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (observing that Rule 59(e) should be "used sparingly in the interests of finality and conservation of judicial resources" and "may *not* be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in the litigation" (quotation omitted)). Mountainside plainly waived the issue the majority decides by failing to raise it either explicitly or implicitly throughout the lengthy litigation process that preceded the trial court's entry of judgment. Accordingly, on this basis I would affirm the judgment.