STATE OF VERMONT

SUPERIOR COURT
Environmental Division Unit

ENVIRONMENTAL DIVISION
Docket No. 107-10-18 Vtec

Snyder Group, Inc. Act 250

DECISION ON MOTIONS

On July 26, 2018, the District #4 Environmental Commission (District Commission) issued The Snyder Group, Inc.; Spears Meadows, Inc.; 1350 Spear, LLC; and Gary Farrell (together, "Snyder Group") an Act 250 permit for the development of land located at 1302 and 1350 Spear Street in South Burlington, Vermont. The proposed development involves the creation of seven lots, construction of 47 residential units, demolition of an existing structure, and certain road improvements ("the Project").[1] The Project will also impact several acres of primary agricultural soils.

A group of neighboring property owners (collectively, "Appellants") appeal the District Commission's decision to grant the permit, along with the permit itself.[2] Appellants also appeal the District Commission's September 10, 2018 decision, in which it reaffirmed its conclusion that Appellants lacked party status under Act 250 Criterion 9(B), pertaining to primary agricultural soils. On appeal, Appellants raise concerns under Criterion 9(B) and Criterion 8, relating to aesthetics. Presently before the Court are the Vermont Natural Resource Board's ("NRB") motion for summary judgment and Snyder Group's motion for summary judgment, which both challenge Appellants' ability to raise concerns under Criterion 9(B).

---

[1] The Project was the subject of a separate appeal before this Court premised on a municipal permit. There is currently a motion to coordinate these dockets on hold before this Court. In a February 28, 2019 decision, this Court resolved the municipal appeal. See In re Snyder Group, Inc., PUD Final Plat, No. 114-8-17 Vtec (Vt. Super. Ct. Envtl. Div. Feb. 28, 2019) (Durkin, J.). That decision is currently on appeal to the Vermont Supreme Court. Given its progress, we consider the motion to coordinate the dockets **MOOT**.

[2] Appellants are Michael Scollins, Mary Scollins, Robert Skiff, Marley Skiff, and the Pinnacle at Spear Homeowners Association. Former appellants William Gilbert and Maurene Gilbert have informed the Court that they sold their abutting property in February 2019. They filed a notice of withdrawal on February 7, 2019, and are therefore no longer parties in this matter.

Snyder Group is represented by its attorneys, Matthew B. Byrne, Robert H. Rushford, and Celeste E. Laramie. Appellants are represented by attorneys Liam L. Murphy and Daniel A. Seff. Attorney Evan Meenan represents the NRB.

## Legal Standard

This Court reviews motions for summary judgment under the familiar V.R.C.P. 56 standards, which are applicable to this Court through V.R.E.C.P. 5(a)(2). If the moving party shows that there is no genuine dispute over material facts and is entitled to judgment as a matter of law, summary judgment is appropriate. See V.R.C.P. 56(a). When multiple motions for summary judgment are before the Court, we evaluate each independently. See, e.g., City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5, 186 Vt. 332.

Parties must support their assertions of fact with citations to affidavits or other admissible evidentiary materials. V.R.C.P. 56(c); White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999). Merely conclusory facts or legal conclusions contained in a statement of facts do not bind this Court or raise a material dispute. In re Shenandoah LLC, 2011 VT 68, ¶ 17, 190 Vt. 149 (citing 10B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2738, at 346-56 (3d ed. 1998); Lussier v. Truax, 161 Vt. 611, 612 (1993) (mem.)).

## Factual Background

The following description of facts serves the limited purposes of providing context and identifying the undisputed facts material to the pending motions. See Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) ("It is not the function of the trial court to find facts on a motion for summary judgment, even if the record appears to lean strongly in one direction." (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993))).

1.      The Project involves forming seven new lots, building 47 residential units, demolishing an existing home, and developing the road system.

2.      The above-named parties that comprise Snyder Group collectively own the Project land located at 1302 and 1350 Spear Street in South Burlington, Vermont ("the Property").

3.      The Property consists of 25.93 acres.

4.      The Property contains, and the Project will impact, a number of acres of primary agricultural soils.[3]

5.      The Property has previously supported an agricultural use.

6.      The University of Vermont ("UVM") owns land adjacent to the Property that it currently farms.

7.      Appellants own land immediately proximate to or adjoining the Property.

8.      Michael and Mary Scollins reside at 214 Meadowood Drive in South Burlington, Vermont, immediately adjacent to the Property. Robert and Marley Skiff own a home and property located at 89 Springhouse Road in South Burlington, Vermont, which is adjacent to the UVM farmland. The Pinnacle at Spear Homeowners Association controls land adjacent to the Property.

9.      The vast majority of Appellants' collective land contains primary agricultural soils that are contiguous with the primary agricultural soils on the Property.

10.     Appellants do not currently farm their properties.

*The 2008 Partial Review Order*

11.     In 2006, Spear Meadows, Inc. ("Spear Meadows")—one party in the current group of applicants we are referring to as Snyder Group—submitted an application detailing a prior version of the Project to the District Commission.

12.     The 2006 application proposed subdivision and construction on 26.19 acres of land that overlaps substantially with the current Property under review.[4]

13.     In 2008, Spear Meadows petitioned the District Commission for partial findings on Criterion 9(B) alone. See 10 V.S.A. § 6086(a)(9)(B) (detailing the Criterion); Act 250 Rule 21 (defining the partial review process, discussed further below).

14.     The District Commission issued a Memorandum of Decision and Order on October 20, 2008, (2008 Partial Review Order) in response to Spear Meadows' request.

15.     Addressing Criterion 9(B), the 2008 Partial Review Order stated that "in order to reduce the impact on the agricultural potential[,] off-site mitigation is appropriate to further the public

---

[3] While there appears to be some disagreement regarding the exact number of acres the Project will affect, the parties agree that the Project will impact a substantial number of acres with primary agricultural soils. The specific total area is not material to the motions.

[4] While Snyder Group does not explain this discrepancy, the minor difference in acreage is not material to our decision on the pending motions.

3

good." The Order "authorize[d] the Applicants to enter into an off-site mitigation agreement with the State of Vermont Agency of Agriculture for the 23.23 acres of Primary Agricultural soils that will be impacted by the proposed Project."

16. The 2008 Partial Review Order went on to state that "[u]pon receipt of a signed off-site mitigation agreement between the Applicants and the Agency of Agriculture, the Commission will revisit the Applicants' application, and will issue a decision on Criterion 9(B)."

17. The Order closed with the statement, "[t]he Commission will defer its decision on Criterion 9(B) for the Project pending submittal of an off-site mitigation agreement."

18. No party appealed the 2008 Partial Review Order.

19. No party entered into or submitted an off-site mitigation agreement after the Order was issued.

20. The 2008 Partial Review Order did not specify a period of time during which any of its statements would remain in effect or bind the parties.

21. Since Spear Meadows did not submit an off-site mitigation plan to the District Commission, the District Commission did not revisit the then-pending application or issue an additional decision on Criterion 9(B).

*The Present Application*

22. Snyder Group submitted an application for the current version of the Project on March 2, 2018.[5]

23. After two hearings, a site visit, and a hold on the proceedings pending submittal of additional information, the District Commission issued Snyder Group's permit and promulgated its Findings of Fact, Conclusions of Law, and Order on July 26, 2018.[6]

---

[5] The pending application is an application to amend a prior version of the permit. This characteristic does not have material implications for the parties' arguments or the present motions.

[6] While Appellants repeatedly object to the facts in the NRB's statement of undisputed material facts, which Snyder Group joined, most of the facts objected to relate to the procedural history of this matter. Appellants' concern appears to derive from the NRB's characterization of the District Commission's actions below. Appellants, however, recite a substantively identical procedural history and direct us to consider the same documents from the proceedings below. As we have examined the specific materials cited to and, regardless, draw all reasonable inferences for the non-moving party, we conclude that Appellants' objections do not raise disputes of material fact.

Further, to the extent Appellants take issue with the NRB's quoting of Appellants' prior statements to the District Commission regarding their interests under Criterion 9(B), we note that this Court conducts a *de novo* review of party status issues and their concerns are not material. See In re RCC Atlantic, Inc., & Sousa, No. 163-7-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.).

24.     While the District Commission granted Appellants preliminary party status for Criteria 8 and 9(B) in the early stages of review, it denied them final party status under Criteria 9(B) in its July 26, 2018 Order.

25.     Appellants requested that the District Commission reconsider its denial of party status. In a decision dated September 10, 2018, the District Commission affirmed its denial of Appellants' party status under Criterion 9(B).

26.     Appellants appealed Snyder Group's permit, the findings and conclusions underlying the permit approval, and the District Commission's denial of party status under Criterion 9(B) to this Court on October 10, 2018.

**Discussion**

The two summary judgment motions before the Court present two issues relating to Criterion 9(B) and Appellants' ability to assert claims relevant to primary agricultural soils. First, Snyder Group's motion raises the question of whether the District Commission's 2008 Partial Review Order resulted in a final and binding approval of Snyder Group's application with respect to Criterion 9(B), such that Criterion 9(B) is not open to review in the present proceedings.

Second, if further review of Criterion 9(B) is not precluded by the 2008 Partial Review Order, both Snyder Group and the NRB's motions require us to assess whether Appellants demonstrate a particularized interest in the primary agricultural soils sufficient for party status under Criterion 9(B).[7] We address these legal issues below.

**I.     Whether the 2008 Partial Review Order precludes further review of Criterion 9(B) in the present proceedings.[8]**

An applicant seeking an Act 250 permit must satisfy all ten criteria under the Act. See 10 V.S.A. § 6086(a) (defining the criteria); see also In re SP Land Co., LLC, 2011 VT 104, ¶ 24, 190 Vt. 418 (citing In re Woodford Packers, Inc., 2003 VT 60, ¶ 22, 175 Vt. 579 (mem.)). But while an applicant must eventually make this showing, circumstances may arise where a District

---

[7]     Snyder Group asserts that a lack of party status under Criterion 9(B) would answer Question 1 of Appellants' Statement of Questions and require dismissal of Questions 2 through 6, which are premised on Criterion 9(B). Preclusion from the 2008 Partial Review Order would require dismissal of Question 1 through 6. Appellants do not dispute this assertion and the Court agrees. The present motions do not raise challenges to Question 7, pertaining to the impacts of the Project on aesthetics under Criterion 8.

[8]     As noted previously, only Snyder Group moved for summary judgment on this question.

Commission's decision on discrete criteria may help the applicant avoid unnecessary or unreasonable costs. Act 250 Rule 21 allows an applicant to request review of specific criteria, or a single sub-criterion, that may be of particular importance to the planning or implementation of its development before proceeding to the comprehensive Act 250 review. See also 10 V.S.A. § 6086(b).

Upon receipt of a petition for partial review under Rule 21, the District Commission can either evaluate the isolated issues or proceed to the remaining criteria. See Act 250 Rule 21(II)(C). If the District Commission decides to issue a partial decision, it is required to make findings of fact and conclusions of law, as well as impose any necessary conditions or terms on the identified criterion or criteria. See Act 250 Rule 21(II)(D). These conclusions remain in effect while the ultimate permit decision is pending for "a reasonable and proper term as determined by the District Commission." Id. The conclusions remain binding on the parties for the duration of the specified term, unless misrepresentation or fraud occurred, or the relevant facts have changed such that the conclusions are no longer valid. Act 250 Rule 21(II)(E). A partial decision does not qualify as an Act 250 permit. See SP Land Co., 2011 VT 104, ¶ 25 (distinguishing partial findings from permits).

In this matter, the District Commission issued the 2008 Partial Review Order in response to Snyder Group's petition under Rule 21. Snyder Group requested review of Criterion 9(B) alone.

Snyder Group argues that the 2008 Partial Review Order resulted in a final approval of the application under Criterion 9(B). Snyder Group contends that because that decision was not appealed, it became binding on all parties, Criterion 9(B) was not properly before the District Commission, and Appellants cannot now attempt to relitigate the issue.

Appellants assert that the 2008 Partial Review Order does not have any preclusive effect. In support of their assertion, Appellants offer the Order's concluding statements that the District Commission would defer its decision on Criterion 9(B) pending submission of an off-site mitigation agreement. Thus, because no mitigation agreement was submitted, and the District Commission did not return to Criterion 9(B), it did not propound any final determinations in 2008.

A final District Commission decision in partial review bars parties from collaterally attacking its conclusions before the expiration of the period specified by the District Commission.

See In re Taft Corners Assocs., Inc., 160 Vt. 583, 593 (1993) (citations omitted) (barring collateral attacks on unappealed Act 250 permit decisions); In re Killington Vill. Master Plan Act 250 Application Appeal, No. 147-10-13 Vtec, slip op. at 56-57 (Vt. Super. Ct. Envtl. Div. June 21, 2016) (Durkin, J.); Act 250 Rule 21(II)(D), (E). Parties who oppose the partial decision must appeal it within 30 days to avoid this binding result. 10 V.S.A. § 8504(k)(3).

The question now before this Court requires us to determine whether the 2008 Partial Review Order resulted in a final decision on Criterion 9(B), or on some aspects of Criterion 9(B), that became binding when it was not appealed.

Final decisions in the Act 250 context resolve "the ultimate issue" before the District Commission. In re Scott Farm Act 250, No. 48-4-17 Vtec, slip op. at 1-2 (Vt. Super. Ct. Envtl. Div. Aug. 22, 2017) (Walsh, J.); see also In re Saxon Ptnrs LLC BJ's Warehouse Sketch Plan, No. 5-1-16 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. July 15, 2016) (Walsh, J.) (generally describing the attributes of final decisions). This means that for an order to be final, it must have "disposed of all matters that should or could properly be settled at the time and in the proceeding then before the decision-making body." Jordan v. State Agency of Transp., 166 Vt. 509, 513 (1997) (internal quotations, alterations, and citations omitted); see also In re Armitage, 2006 VT 113, ¶ 6, 181 Vt. 241; Scott v. City of Newport, 2004 VT 64, ¶ 12, 177 Vt. 491. Only final decisions can have preclusive effect. Trickett v. Ochs, 2003 VT 91, ¶ 16, 176 Vt. 89; see also Lamb v. Geovjian, 165 Vt. 375, 379-80 (1996) ("Res judicata bars the litigation of a claim or defense if there exists a *final* judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." (emphasis added) (internal quotations and citations omitted)).

In the 2008 Partial Review Order, the District Commission stated that it chose to "defer its decision on Criterion 9(B) for the Project pending submittal of an off-site mitigation agreement." It also qualified its conclusions with the statement that "[u]pon receipt of a signed off-site mitigation agreement . . . the Commission will revisit the Applicants' application, and will issue a decision on Criterion 9(B)." Thus, by its own terms, the 2008 Partial Review Order did not close the District Commission's review of Criterion 9(B). See Zingher v. Dep't of Aging and Disabilities, 163 Vt. 566, 571 (1995) (determining that res judicata did not apply where "[t]he

plain language of the order leaves open the possibility of reviewing the matter again and is, therefore, not a final agency determination.").

In addition, without a mitigation agreement, or without some specifications regarding the details of that agreement, the 2008 District Commission *could not* have determined whether "suitable mitigation w[ould] be provided for any reduction in the agricultural potential of the primary agricultural soils," as required by the plain terms of Criterion 9(B). An order approving the proposal under Criterion 9(B) without providing any specificity as to the conditions of a future mitigation agreement would impose an invalid condition subsequent. See In re Treetop Dev. Co. Act 250 Dev., 2016 VT 20, ¶ 14, 201 Vt. 532 (holding that a District Commission cannot approve an Act 250 permit while reserving the right to subsequently modify the permit's conditions).

While the 2008 Partial Review Order allowed Spear Meadows to obtain an off-site mitigation agreement, it did not resolve the ultimate issue before the District Commission of whether the application satisfied Criterion 9(B), or whether the agreement was adequate. The District Commission reserved to itself the option of rejecting any off-site mitigation agreement, or even revising its conclusion that off-site mitigation alone could satisfy the requirements of Criterion 9(B). Thus, the 2008 Partial Review Order did not dispose of any aspect of Criterion 9(B) with finality.

In addition, the fact that the District Commission did not specify a "reasonable and proper term" during which any of its conclusions would remain final and binding indicates that it did not intend to finally resolve any questions related to Criterion 9(B). See Act 250 Rule 21(II)(D), (E). Given the language of the 2008 Partial Review Order and the requirements of Criterion 9(B), we conclude that the District Commission refrained from reaching a final decision on Criterion 9(B), or any aspect of the Criterion, until it could assess whether the mitigation provided for in the agreement was suitable.

Further, interlocutory review of the 2008 Partial Review Order would have been inappropriate.[9] Thus, the 2008 Partial Review Order did not result in a final decision *or* an

---

[9] Even without a final decision, this Court can hear an interlocutory appeal of a preliminary order in a narrow class of cases. See Scott Farm, No. 48-4-17 Vtec at 2 (Aug. 22, 2017) (Walsh, J.). Interlocutory appeals of orders by an administrative body like the District Commission are reviewed under 3 V.S.A. § 815. In re Mathez Act 250 LU Permit, 2018 VT 55, ¶ 8. The statute allows appeals of decisions that are not final only "if review of the final

appealable preliminary order. Appellants cannot now be bound by prior statements that they could not have appealed previously. See Lamb, 165 Vt. at 379-80 (citation omitted) (explaining that preclusion only applies when a party did or could have raised the concerns in previous litigation).

For these reasons, we conclude that the 2008 District Commission deferred its decision on Criterion 9(B) in its entirety. Without a mitigation agreement to revisit, the District Commission did not make any binding determinations. Snyder Group's motion for summary judgment on this issue must therefore be **DENIED**.[10]

## II. Whether Appellants have identified a particularized interest sufficient to secure party status under Criterion 9(B).[11]

Because the District Commission's 2008 Partial Review Order does not preclude review of Criterion 9(B) in the current proceedings, we next turn to the question of whether Appellants qualify for party status under the Criterion. Below, the District Commission granted Appellants

---

decision would not provide an adequate remedy, and the filing of the appeal does not itself stay enforcement of the agency decision." 3 V.S.A. § 815(a).

In addition, the Vermont Supreme Court has explained that interlocutory review may be appropriate when an order exceeds the jurisdiction of the decision-making body below, or is defective in such a way that delay would lead to mounting harms. Taft Corners, 160 Vt. 583, 588-89 (1993) (citations omitted).

Here, there is no allegation that the District Commission exceeded its jurisdiction with the 2008 Partial Review Order, or that its statements produced harm that might worsen over time. More importantly, any error in the 2008 Partial Review Order, including its statement that off-site mitigation alone could satisfy Criterion 9(B), could have been fully cured in an appeal of the District Commission's final decision if it had revisited Criterion 9(B). See Scott Farm, No. 48-4-17 Vtec at 2 (Aug. 22, 2017) (citing In re Maple Tree Place Assocs., 151 Vt. 331, 332 (1989); Beaupre v. Green Mountain Power Corp., 168 Vt. 596, 597 (1998)). Interlocutory review was not available.

[10] Because of this conclusion, we do not reach Appellants' arguments that any final decisions in the 2008 Partial Review Order expired under 10 V.S.A. § 6091(b) or after the five-year period the NRB recommends in its Master Permit Policy and Procedure for Partial Findings of Fact. We also do not reach the question of whether any alleged differences between the proposal in 2008 and the Project currently under review render conclusions in the 2008 Partial Review Order inapplicable to the present proceedings.

[11] As noted above, both Snyder Group and the NRB moved for summary judgment on the issue of whether Appellants have identified a particularized interest in primary agricultural soils. However, in the NRB's reply to Appellants' opposition to its motion, the NRB significantly reduced the scope of its challenge. In response to the affidavits that Appellants submitted in support of their opposition, which described their particularized interests under Criterion 9(B), the NRB narrowed its motion to include just a couple of those particularized interests. Specifically, the NRB's motion now challenges whether Appellants can raise concerns under Criterion 9(B) that relate to pastoral views and wildlife. See Appellants' Affs. ¶¶ 22-23.

The NRB does not object to a grant of party status under Criterion 9(B) for Appellants' other asserted interests—see Appellants' Affs. ¶¶ 1-21—though it did reserve its right to question whether Appellants have supported their claims after they present their evidence at trial. Snyder Group did not narrow its motion and continues to assert a lack of party status under Criterion 9(B) in full.

9

preliminary party status under Criterion 9(B). Prior to the close of the hearings, the District Commission reexamined Appellants' party status, as required by 10 V.S.A. § 6085(c)(6) and Act 250 Rule 14(E)(3), and denied Appellants final party status under that criterion. The District Commission declined to alter its determinations in a September 10, 2018 order.[12]

Snyder Group argues that Appellants do not have standing to raise any issues relating to primary agricultural soils. Snyder Group asserts that Appellants do not offer a particularized interest in the Project's primary agricultural soils that differs from the interests of the general public—interests which are already represented by the Vermont Agency of Agriculture, Food and Markets. As footnoted above, the NRB narrowed its challenge to Appellants' party status in its reply to their opposition but continues to assert that Appellants do not have party status to raise issues related to pastoral views and wildlife habitat under Criterion 9(B).

We evaluate issues related to party status *de novo*, without reference to the evidence or arguments presented to the District Commission. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.).

Appellants asserting concerns under a specific Act 250 criterion must qualify for party status under that criterion. To qualify, appellants must first possess a particularized interest protected by the criterion, not just a general policy interest shared with the public at large. See In re Barefoot & Zweig Act 250 Application, No. 46-4-12 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Mar. 13, 2013) (Durkin, J.) (citations omitted); 10 V.S.A. § 6085(c)(1)(E); 10 V.S.A. § 8504(a).[13]

Next, that interest must be protected by the specific criterion under which the appellants seek party status. In re Granville Mfg. Co., Inc., No. 2-1-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin, J.) (citation omitted); see also 10 V.S.A. § 6805(c)(2)(D)(ii).

---

[12] Under V.R.E.C.P. 5(d)(2), this Court automatically accords status to an appellant claiming party status as a person aggrieved when the appellant files a notice of appeal and meets the requirements of 10 V.S.A. § 8504(a) and (d)(1). Because Appellants appeal, in part, the District Commission's decision denying them party status under 10 V.S.A. § 8504(d)(1)(B), they gained party status automatically upon filing their notice of appeal and retain that status unless this Court determines otherwise on motion.

[13] We emphasize 10 V.S.A. § 8504(a), which permits any person aggrieved by a decision of a District Commission to appeal to this Court. In the Act 250 context, a "person aggrieved" is a person who alleges an injury to a "particularized interest" protected by Act 250 that is attributable to an act or decision of a District Commission and can be redressed by this Court. 10 V.S.A. § 8502(7).

Lastly, at the pre-trial stage, appellants must show that there is a "reasonable possibility" that the relevant decision or permit on appeal will affect their particularized interest. In re Bennington Wal-Mart Demolition/Constr. Permit, No. 143-7-09 Vtec, slip op. at 10 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.). This requires a causal connection between the proposed project and the alleged impact to their particularized interests. In re Big Spruce Rd. Act 250 Subdivision, No. 95-5-09 Vtec, slip op. at 6 (Vt. Envtl. Ct. Apr. 21, 2010) (Durkin, J.). The appellants do not need to *prove* an impact, but they must meet a minimum factual threshold sufficient to move their claim outside of the realm of mere speculation and to show that an impact may occur. Barefoot & Zweig, No. 46-4-12 Vtec at 5-6 (Mar. 13, 2013); see also In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.).

Along with these general requirements for party status under Act 250 criteria, this Court has also considered the dimensions of party status under Criterion 9(B) specifically. These specific parameters refine and adapt the generally applicable party status requirements to the Criterion 9(B) context, but do not limit or expand standing. See In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 7, 188 Vt. 262 (recognizing that courts cannot "judicially expand the class of persons entitled to such [appellate] review" when standing is regulated by statute (quoting Garzo v. Stowe Bd. of Adjustment, 144 Vt. 298, 302 (1984))).

Criterion 9(B) requires that "the development or subdivision of primary agricultural soils will not result in any reduction in the agricultural potential of the primary agricultural soils," or that any impact to the soils will be mitigated to the extent possible. 10 V.S.A. § 6086(a)(9)(B). In evaluating the specific prerequisites for party status under this Criterion, the Court has recognized the distinction between an appellant's interest in protecting the agricultural potential of soils and an interest in the ancillary benefits of life in an agricultural area, such as pastoral views, a dispersed settlement pattern, or an agricultural character of the neighborhood. See In re Morgan Meadows/Black Dog Realty Subdivision Act 250 Permit, No. 267-12-07 Vtec, slip op. at 6-7 (Vt. Envtl. Ct. May 1, 2008) (Wright, J.); see also Morgan Meadows, No. 267-12-07 Vtec at

7 (Dec. 1, 2008) (clarifying the May 1, 2008 decision).[14]  These ancillary interests are protected by, and must remain confined to, more relevant Act 250 criteria, like Criteria 8, 9(H), and 9(L).

This Court has also recognized that appellants do not need to be farmers to assert Criterion 9(B) concerns.  See Morgan Meadows, No. 267-12-07 Vtec at 8 (Dec. 1, 2008) (citing In re Eastview at Middlebury, Inc., No. 256-11-06 Vtec, slip op. at 2-3 (Vt. Envtl. Ct. Feb. 15, 2008) (Durkin, J.)); see also In re The Van Sicklen Ltd. P'ship, No. 4C1013R-EB, Mem. of Decision, at 6-7 (Vt. Envtl. Bd. June 8, 2001) (citing In re Spear St. Assocs., No. 4C0489-1-EB, Mem. of Decision, at 3 (Vt. Envtl. Bd. Apr. 4, 1984)).[15]  Further, a non-farmer appellant's proximity to agricultural lands can contribute to a finding that their interest is particularized.  See Eastview at Middlebury, No. 256-11-06 Vtec at 3 (Feb. 15, 2008); see also Morgan Meadows, No. 267-12-07 Vtec at 7 n.2 (Dec. 1, 2008) (citations omitted).

Turning to the interests Appellants express to this Court, we first address their concern that the Project will lead to a loss of the pastoral views they currently enjoy.  This is plainly an aesthetic concern that Appellants can assert under Criterion 8, but not Criterion 9(B).  The scenic landscape Appellants value is an ancillary benefit of an agricultural neighborhood and not an interest directly related to our Criterion 9(B) review of the Property's agricultural potential.

The same is true for Appellants' interest in protecting any wildlife that may depend on the land in its current state, a concern better presented under Criterion 8(A).  This Court must be mindful of the distinction, especially given the shifting burden of proof.  See 10 V.S.A. § 6088

---

[14]  To the extent the parties question the effect of the second Morgan Meadows decision on the precedential value of the first, we note that the second decision should be read as a clarification of the first based on its plain language.  The second decision provides a "closer examination" of the case law and statutory changes at issue in the first.  Morgan Meadows, No. 267-12-07 Vtec at 4 (Dec. 1, 2008).  Both elaborate on the requirements for Criterion 9(B) status and, while the second decision introduces slightly greater detail, we detect no material conflict between the two.  Thus, the opinions both articulate the same principles and can be read together.

[15]  The inquiry into Appellants' party status raises the question of whether the Morgan Meadows decisions reduced the precedential weight of the former Environmental Board's decisions on Criterion 9(B) standing.  This Court gives Environmental Board decisions the "same weight and consideration" afforded to the Court's own prior decisions.  10 V.S.A. § 8504(m).  In Morgan Meadows, we reached the conclusion that the Environmental Board formerly permitted appellants to assert interests ancillary to an agricultural use under Criterion 9(B), while we now consider those interests under other criteria.  No. 267-12-07 Vtec at 7 n.5 (May 1, 2008).  This interpretation of the Environmental Board's prior decisions does limit those decisions with respect to the line between Criteria 8 and 9(B), but not in their entirety.  They continue to support the principles for which we cite them here.

(placing the burden of proof on applicants for Criterion 9 but on parties opposing the application for Criterion 8).

Appellants next assert an interest in mitigating impacts to the existing and future working agricultural landscape in their neighborhood that may result from the impairment of the primary agricultural soils on the Property. In conjunction, Appellants express an interest in preserving the agricultural potential of their own adjoining properties, which also contain primary agricultural soils.

They assert that loss of the Property's primary agricultural soils would significantly reduce the viability of their own lands and the adjacent UVM property for farming, while rendering the area more susceptible to non-agricultural development, because the Property would be integral to any future working agricultural landscape. This interest is corroborated by the Property's historical agricultural use and the current use of the adjacent UVM land for farming. Further, Snyder Group does not dispute that the Project will impact the Property's primary agricultural soils. In fact, it appears indisputable that the proposed development will significantly reduce the agricultural potential of the identified agricultural soils. We therefore conclude that, as adjoining property owners, Appellants' interest in the agricultural potential of the specific area surrounding and including the Project is particularized. Cf. Morgan Meadows, No. 267-12-07 Vtec at 10-11 (May 1, 2008) (denying party status to an organization and its members because, without proximity, the interests asserted were generalized).

While many of Appellants' assertions are based on personal knowledge and statements in the form of affidavits, we note the unique nature of the interest Criterion 9(B) is designed to protect. The Criterion focuses on the *future* agricultural potential of primary agricultural soils on the project site and neighboring properties. Thus, the Criterion involves an interest predicated on future, or continued, agricultural uses at the neighborhood level. This has implications for the types of evidence the parties can or should offer both before and during trial, and may require support in the form of testimony.

We add that party status is a question that remains open throughout the Act 250 permit review process. As this Court must apply the standards applicable before the District Commission, we may be obligated to reevaluate party status after the presentation of evidence

13

at trial. See 10 V.S.A. § 8504(h); 10 V.S.A. § 6085(c)(6) (providing that the District Commission shall reevaluate party status prior to the close of its hearings).

We therefore conclude that Appellants have demonstrated the reasonable possibility of an impact to their particularized interest in the agricultural potential of the Property and their properties, and in the working agricultural landscape in their neighborhood. We therefore conclude that they should be afforded party status to assert that interest under Criterion 9(B).

Thus, the NRB's motion, as limited by its reply to Appellants' opposition, is **GRANTED**. Snyder Group's motion for summary judgment on this issue is **GRANTED IN PART** and **DENIED IN PART**.

### Conclusion

Because by its plain terms the 2008 Partial Review Order did not finally resolve the prior application's compliance with Criterion 9(B), it is not a final decision with preclusive effect in the present proceedings. Snyder Group's motion for summary judgment on this issue is **DENIED**.

Further, Appellants have demonstrated the reasonable possibility of an impact to their particularized Criterion 9(B) interests. Criterion 9(B), however, does not include interests related to pastoral views or wildlife concerns, which may fit within the scope of other criteria. Appellants cannot assert these interests under Criterion 9(B).

Accordingly, the NRB's motion for summary judgment, as narrowed by the NRB's reply to Appellants' opposition, is **GRANTED**. Because we exclude certain concerns from the scope of Appellants' Criterion 9(B) interests, but recognize Appellants' party status to assert their interest in the agricultural potential of the area under Criterion 9(B), we **GRANT IN PART** and **DENY IN PART** Snyder Group's motion for summary judgment on this issue.

The Court Manager shall set this matter for a telephonic conference so that the Court may discuss with the parties what actions need to be completed in preparation for trial.

Electronically signed on May 22, 2019 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division